[Civ. No. 4661.  First Appellate District, Division One.—April 30, 1924.]

MACK HOWARD, as Administrator, etc., Appellant, v. W. H. HOWARD et al., Respondents.

[1] QUIETING TITLE—PLEADING—STRIKING OUT IRRELEVANT MATTERS— EVIDENCE.—In an action to finally settle and determine as between parties all conflicting claims to property in controversy, and to decree to each such interest or estate therein as he may be entitled to, it is not error for the trial court to sustain motions by defendants to strike out all irrelevant and redundant matter, leaving only the elements necessary to constitute a cause of action under section 738 of the Code of Civil Procedure; and the plaintiff is not injured by such ruling where all the material facts which he claims were improperly stricken from the original complaint were thereafter properly admitted in evidence at the trial.

[2] ID.—DEEDS—HOMESTEADS—DESCRIPTION OF PROPERTY.—Generally speaking, a deed will be sustained if it is possible from the whole description to ascertain and identify the land intended to be conveyed with reasonable certainty, either by the calls of the instrument as applied to the land, or by the descriptive features of the grant, and if the property can be identified by the description by a competent surveyor, with or without the aid of extrinsic evidence, nothing more is required; and the description in a declaration of homestead need not be more particular than is required in the case of a deed.

[3] ID.—INSUFFICIENT DESCRIPTION—EXTRINSIC EVIDENCE.—A declaration of homestead, wherein the property is described as being bounded on the north, south and east, respectively, by the tracts of certain named individuals, and on the west by the Russian River, is legally insufficient where it is shown by extrinsic evidence that at the time of the declaration of homestead the said named individuals were merely squatters upon the unsurveyed public domain, that their claims never ripened into right or title of any kind, and any attempt to identify the land with the aid of the description in the declaration would be mere conjecture.

[4] ID.—RULING ON PROFFERED EVIDENCE—ABSENCE OF ERROR.—In this action to quiet title, in which the principal issue involved was

1. See 21 R. C. L. 595; 2 Cal. Jur. 1016; 2 R. C. L. 244.
2. Sufficiency of description of property in deed, note, 66 Am. St. Rep. 59. See, also, 9 Cal. Jur. 292; 8 R. C. L. 1072, 1076.
3. See 13 Cal. Jur. 472.
4. See 8 R. C. L. 1074.

the validity of a certain declaration of homestead, it could not be said that the trial court erred in sustaining defendants' objection to the introduction in evidence of such declaration of homestead and in failing to rule upon the admissibility of the declaration of homestead where, on the first three occasions when the declaration of homestead was offered in evidence and objection interposed thereto, the offer was withdrawn, and, on the fourth occasion, the trial court, with the acquiescence of plaintiff, reserved its ruling until all the evidence was in, and the evidence in the case was such that, if at any time during the course of the trial the declaration of homestead had been admitted, the court would have had to hold that the parol evidence was insufficient to aid in the location with reasonable certainty of the land described in the instrument.

[5] ID.—PRIOR JUDGMENT—APPEAL—RES JUDICATA.—In this action to quiet title under section 738 of the Code of Civil Procedure, the trial court did not err in not holding that a judgment rendered in a prior action, between certain of the same parties, and affecting a part of the same lands, was *res judicata* as to the same issues and between the same parties, and in sustaining the objection of counsel for the defendants to the introduction in evidence of the judgment-roll in such prior case, where an appeal had been taken from the judgment in such prior action, and that appeal was still pending.

[6] ID.—REJECTED EVIDENCE—APPEAL—INSUFFICIENT RECORD.—On appeal from the judgment in such subsequent action, the appellate court cannot determine whether the trial court erred in sustaining the objection to the introduction in evidence of the testimony of certain witnesses (since dead) in the prior action, where the record on appeal does not show that such testimony was offered or marked for identification.

(1) 4 C. J., p. 940, sec. 2914.    (2) 18 C. J., p. 180, sec. 62.    (3) 29 C. J., p. 820, sec. 89.    (4) 4 C. J., p. 963, sec. 2948; 18 C. J., p. 181, sec. 62.    (5) 34 C. J., p. 771, sec. 1189.    (6) 4 C. J., p. 72, sec. 1661.

APPEAL from a judgment of the Superior Court of Mendocino County.    H. S. Preston, Judge.    Affirmed.

The facts are stated in the opinion of the court.

A. L. Wessels and Chas. A. Shurtleff for Appellant.

5.  See 15 Cal. Jur. 98; 15 R. C. L. 949.
6.  See 2 Cal. Jur. 525; 2 R. C. L. 133.

Will Van Dyke, Chas. Kasch, Mannon & Mannon and Eden & Koepsel for Respondents.

ST. SURE, J.—This is an action and appeal by' Mack Howard, as administrator of the estate of Rachael Howard, deceased, for the benefit of the heirs of the said Rachael Howard, to quiet the title of said heirs to a tract of land comprising some 445.37 acres, which, it is claimed, Rachael Howard owned in fee simple in her lifetime by virtue of survivorship of her husband, Mark W. Howard. The said Mark W. Howard had, on July 26, 1861, executed and recorded a declaration of homestead which it is claimed covered the tract in question and grant title to which he afterward acquired for adequate consideration from grantees of the patentee of the United States, though at the time of such declaration he was merely a squatter under the purchase of squatters' rights on what he believed to be the public domain. Grant title to the property was obtained on December 17, 1867, and November 20, 1871. The title of Rachael Howard is claimed to be paramount to and to avoid all titles or claims in said lands claimed to be derived under four deeds executed by Mark W. Howard alone in the years 1890 and 1892 to Lucy S. Howard, Phalby Ann Cleveland and Thomas B. Howard, three children of Mark W. Howard and Rachael Howard, covering four parcels which together make the whole of the tract claimed to be covered by the declaration of homestead. Plaintiff, as part of his relief, asked that these deeds and other conveyances and encumbrances thereunder be canceled (3412, Civ. Code). The defendants and respondents are surviving children of Mark W. Howard and Rachael Howard, representatives and heirs of other children of said couple, and the grantees, tenants for life, remaindermen, distributees and mortgagees of the grantees under the aforesaid four deeds of Mark W. Howard, under conveyances, decree of distribution and encumbrances executed January 29, 1917, April 17, 1919, April 17, 1918, November 15, 1919, and May 6, 1920, by the grantees of the aforesaid deeds and their successors, and thereafter recorded in the office of the county recorder of Mendocino County, where the land is situate.

Trial resulted in a judgment adverse to plaintiff's claims, and he appeals from the judgment and order denying his motion for a new trial.

A former action, brought on April 17, 1918, by the administrator of the estate of Ann Cleveland, the same person called Phalby Ann Cleveland, and a grantee under one of the aforesaid four deeds of Mark W. Howard, against Mack Howard, as administrator of the estate of Rachael Howard, deceased, to quiet title to that portion of the tract here in dispute covered by the deed to Phalby Ann Cleveland by Mark W. Howard, resulted in judgment in favor of the defendant and against any interest of the plaintiff in the particular parcel in controversy there. An appeal was noticed from said judgment, but no further steps were taken on such appeal because of a stipulation entered into between the respective parties to that action to the effect that Mark Howard, as administrator of the estate of Rachael Howard, deceased, should bring an action to have determined that another parcel of land, also included in the tract here in controversy, was the property of the heirs of Rachael Howard, subject to the administration of her estate, and that no further steps need be taken in the appeal aforesaid until the judgment in the action to be so brought should have become final. Plaintiff-appellant claims, as part of his contentions, that the judgment in the case of *Hopkins* v. *Howard* is *res adjudicata* as to the matters there in dispute, and which were again raised in the present action by the plaintiff in the Hopkins case.

Plaintiff-appellant thereafter brought the present action, in which as administrator he seeks to quiet title in the heirs of Rachael Howard, not only to the parcel mentioned in the stipulation made in the action of *Hopkins* v. *Howard,* but to the land in controversy in said action, the parcel with respect to which the stipulation was made, and a further piece, all three parts lying together in roughly parallel strips and forming as a whole, from south to north in the order given, the tract covered by the complaint. It comprises in all 445.37 acres, having the Russian River for its western boundary.

The entire tract of land in controversy here was part of the great Yokayo Rancho grant of over thirty-five thousand acres, made by the Mexican government through Governor

Pio Pico to. Cayetano Juarez in 1845 and confirmed to him in 1846. By the treaty of Guadalupe Hidalgo these lands came into the possession of the United States. The claim of Juarez for confirmation of his title by the United States was first rejected, and on appeal later confirmed to him, the final adjudication being made on April 17, 1863, and patent issued on March 8, 1867. Under the administration of the United States, and prior to the final confirmation in 1863, and possibly until 1867 when the patent issued and survey made in 1866–67 on behalf of the grantees of Juarez, the lands of the vicinity were believed by early settlers to be public domain to be surveyed and open to be filed on at some later day. In this belief squatters settled there, holding various tracts at distances from each other sufficient to make each an occupant of the customary quarter section or 160 acres. Just prior to 1858 men named Beason and Stephens occupied part of the tract and had a house and other buildings thereon; land to the east of them was held by one Potter; to the north by Abbott, and to the south by "Bill" Stevens.

Mark W. Howard, husband of the plaintiff's intestate, was living in Sonoma county in 1858 with his wife and eleven children, having arrived there after brief sojourns in other California counties following their arrival from Missouri in 1856.

Mr. Howard came to Mendocino County in advance of his family and bought the squatters' rights of Beason and Stephens, paying probably between five and six hundred dollars for them. He then brought his family to Mendocino County in September, 1858. Here they settled and lived continuously until the death of Mark W. Howard in 1900 and his wife's in 1902. The year following their arrival in the county (1859) one Samuel Ackerman took possession of the land to the north formerly occupied by Abbott, and he, with Howard, proceeded to erect a fence between their holdings. From the time of the arrival of Mark W. Howard in the county until 1866–67 there were no known titles to the land, and though purchases of squatters' rights were said to be made of definite acreages, no documents evidencing such purchases were produced.

By judicial deed to one S. Clinton Hastings in September, 1859, of the whole rancho, followed by reconveyances of

shares therein by him to Currey, Currey to Carpentier, quit-
claim from Cayetano Juarez to Currey, and conveyance of
another share by Currey to Carpentier, the ranch Yokayo
finally came, by power of attorney and deeds from Hastings,
Currey and Carpentier, to William Doolan in 1867 and 1869.
On December 17, 1867, a deed from Hastings, Currey and
Carpentier to Mark W. Howard, executed by William Doolan
as attorney in fact, conveyed lot 93, 172 acres, as shown by
"Healey's Survey and Map of the Yokayo Rancho," for
the consideration of two thousand dollars. On May 12,
1871, Doolan, for himself and as attorney in fact for Hast-
ings, conveyed to Mark W. Howard, for four hundred and
fifty dollars, another piece of the Rancho Yokayo adjoin-
ing lot 93 to the east, and being the southerly part of lot 98,
containing two hundred acres. On November 12, 1871, for
the expressed consideration of $615.17, Hastings and Doolan,
by conveyance of Doolan to M. W. Howard, property was
transferred having a slightly different description and re-
ferred to Healey's survey, but seeming to cover the same
territory conveyed by the deed of May 12, 1871, with the
addition of acreage to 273.37 acres. This is further de-
scribed as the southeasterly part of lot 98, and with the
addition of the 172 acres of lot 93 make up the 445.37 acres
covered by the complaint here.

On June 6, 1892, one of the deeds sought to be canceled
was executed by the same Mark W. Howard to Lucy S.
Howard, a daughter, for the expressed consideration of five
thousand dollars, covering two hundred acres forming the
central strip of lots 93 and 98 from west to east. "House
furnishings and goods" were also included in this convey-
ance, but a life estate reserved to the grantor. On January
29, 1917, Lucy Howard by gift deed conveyed the same
land to W. H. Howard, Taylor Howard and Mack Howard
(three brothers), and the survivor of them, for life, with re-
mainder to Howard Martin and Grace Agnes Prichard. The
consideration expressed is love and affection. Lucy Howard
is dead and Mack Howard was the administrator of her
estate.

On June 16, 1892, a deed was executed by Mark W.
Howard to Phalby Ann Cleveland, a daughter, of the part
of lots 93 and 98 lying south of that conveyed to Lucy
Howard, comprising sixty-four acres, for three hundred

dollars. Phalby Ann Cleveland is dead. Lucia Hopkins, her administratrix, was the plaintiff in the action of Hopkins v. Howard concerning this land, heretofore referred to several times.

February 25, 1890, for one thousand dollars, Mark W. Howard deeded to Thomas B. Howard, a son, the northerly part of lot 93, bounded on the south line by Howard Creek, and part of Lucy Howard's grant, of forty acres, and on June 10, 1892, for the expressed consideration of three hundred dollars, he conveyed to the same son the northerly balance of lot 98, sixty-five acres.

Thomas Howard died, probate of his will had been had, and decree of final distribution made on November 15, 1919, of the land covered by the deeds of February 25, 1890, and June 20, 1892, to Thomas B. Howard, referred to above, as well as other land and personal property. The decree recites that Mark W. Howard, the son, was entitled to all of the property of the estate under his father's will, but had conveyed a half interest therein to his mother by deed of April 17, 1919, of record. Distribution was made of the real property equally to the mother, Florence G. Howard, and the son, Mark W. Howard. On May 6, 1920, the son, Mark W. Howard, with his wife, Antoinette Howard, joined in a mortgage to Joseph Cunningham of the land described in the above deed from the son to his mother as security for a note of six thousand dollars.

The various surviving children of the original Mark W. Howard, the grantees, representatives and heirs, devisees and mortgagee, under these instruments, are defendants here.

Errors assigned by appellant are grouped and separately denominated "issues." Thirteen "issues" are presented for our decision. [1] Under the first issue the point is made that the trial court erred in sustaining the motions of defendants to strike from the complaint certain enumerated paragraphs. The action is one to quiet title under section 738, Code of Civil Procedure. The object of such an action is to finally settle and determine as between parties all conflicting claims to property in controversy, and to decree to each such interest or estate therein as he may be entitled to (*Peterson* v. *Gibbs*, 147 Cal. 1 [109 Am. St. Rep. 107, 81 Pac. 121]). The complaint, from which the court

expunged all irrelevant and redundant matter, presents a cause of action under section 738, Code of Civil Procedure. It avers the death and intestacy of Rachael Howard and the appointment and qualification of the administrator, plaintiff-appellant herein; the death of certain heirs of said Rachael Howard, their testacy and the appointment of executors, who are made defendants; the death of other heirs intestate and the appointment of administrators of their estates, also made defendants; the description of the land in question is given, and in connection therewith it is alleged that the senior Howards, father and mother, since deceased, during the year 1858, in good faith, for the purpose of actual settlement and acquiring a home for themselves and family, entered upon and into actual possession of the land; that said "Rachael Howard became, and was, and ever since and until the time of her death has been, the owner in fee simple" of the premises described, "and of each and every part thereof"; that the defendants named claim an interest in the premises adverse to the heirs of Rachael Howard, deceased, and the ownership of said heirs, and to the possession thereof by said heirs and this administrator, which claim or claims constitute a cloud upon title and are without right. Here we have every element of a complaint to quiet title. (*Gray* v. *Walker,* 157 Cal. 381, 384 [108 Pac. 278].) It further appears that material facts, which appellant claims were improperly stricken by the trial court from the original complaint, were thereafter properly admitted in evidence at the trial. It is therefore apparent that plaintiff was not injured by the ruling of the court in this particular.

Issues two and three appertain to the validity of the homestead and the identification of lands therein described by parol evidence. Appellant complains that the trial court committed error in holding the declaration void on its face for uncertainty. It appears from the record that the trial court did not hold the homestead *void on its face,* but did hold, after parol testimony had been introduced in an attempt to identify the land, that the description contained in the declaration was such that the lands intended to be impressed with the homestead could not be identified with reasonable certainty.

Both appellant and respondents agree that the main question presented on this appeal is whether or not the description contained in the declaration of homestead can be applied, with the aid of extrinsic evidence, to the tract of land aggregating 445.37 acres involved in this action. [2] Both agree that a description in a declaration of homestead need not be more particular than is required in the case of a deed. Generally speaking, a deed will be sustained if it is possible from the whole description to ascertain and identify the land intended to be conveyed with reasonable certainty, either by the calls of the instrument as applied to the land, or by the descriptive features of the grant. If the property can be identified by the description by a competent surveyor, with or without the aid of extrinsic evidence, nothing more is required. (9 Cal. Jur., Deeds, sec. 157.)

[3] The declaration of homestead upon which appellant's action is founded, is as follows:

"Know all men by these presents. That I, M. W. Howard of the County of Mendocino and State of California, do hereby certify and declare that I am married and that I do now reside with my family on the lot of land and premises situated in the county of Mendocino, State of California bounded and described as follows, to wit: Bounded on the North by Samuel Ackerman's tract, on the South by William Stevens, on the East by Thomas Owens, on the West by Russian River, containing 160 acres, more or less.

"And that it is my intention to use and claim the said lot of land and premises, together with the dwelling thereon, and its appurtenances as a homestead, under the provisions of the Act of the Legislature of the State of California, entitled 'An Act to amend an act to Exempt the Homestead and other property from forced sale in certain cases' passed April 21, 1851, approved April 28th, 1860 and the Act thereby amended.

"(Seal)                    (Signed)   M. W. HOWARD."

Appellant's counsel says, at page 234 of the opening brief: "It is an elementary proposition of law that the question as to whether or not a tract of land is capable of being identified is a *pure question of fact.*" (Italics appellant's.)

In connection with the historical facts hereinabove narrated it is well to keep in mind the description contained in the homestead: "Bounded on the north by Samuel Ackerman's tract, on the south by William Stevens, on the east by Thomas Owens, on the west by Russian River, containing 160 acres, more or less."

A reading of this description evokes the impression that it should be possible for not only a surveyor but a mere layman to identify with reasonable certainty the land upon the face of the earth. The fact of the matter is that the only boundary mentioned capable of location with any degree of certainty, is the Russian River. Ackerman, Stevens and Owens were squatters upon the unsurveyed public domain. Their claims, nebulous in character, inchoate, imperfect, undefined, never ripened into right or title of any kind, and, so far as the record before us discloses, any attempt to identify the land with the aid of the description in the declaration would be mere conjecture.

Ackerman never obtained title to any tract and never owned at the time the said declaration of homestead was filed, or afterward, any tract of land in that vicinity. Owens never obtained title or owned any tract of land to the east of lands subsequently purchased by Mark W. Howard. Stevens never received title to any lands whatsoever. The record does not show what lands any of these squatters claimed in 1861 at the date of the filing of the declaration of homestead.

More than thirty years elapsed between the execution of the first deed and the filing of the complaint in this action. Almost twenty-nine years elapsed between the execution of the remaining deeds and the filing of the complaint herein. No attack was made on these deeds during the lifetime of Rachael Howard, though she lived for ten years after the execution of the last deed, and no attack was made upon these deeds for a period of nineteen years subsequent to the death of Rachael Howard.

The testimony of plaintiff's witnesses Peter and Mack Howard, sons of Mark W. Howard and Rachael Howard, evidently did not disclose to the trial court's satisfaction the location with reasonable certainty of any boundary lines between the various holders, although there was an abundance of hearsay and contradictory evidence on the subject

stricken out on objection or found against. These witnesses, aged 71 and 65 years, respectively, at the time of the trial in the lower court in October, 1921, were boys of eight and two years when their parents came to Mendocino County, and eleven and five at the date of the declaration of homestead. The testimony of witness Peter Howard, upon which main reliance is placed by appellant, was not only inconsistent and ambiguous, but on cross-examination was materially impeached by that given by him on some of the same points in the former action of *Hopkins* v. *Howard.*

W. H. Howard, a son about twenty years of age at the time of the declaration of homestead, was also called as a witness for the plaintiff, but on cross-examination made admissions from which it might be inferred there was doubt as to the quantity of land included in the homestead.

There was also presented to the trial court for its consideration the testimony of R. E. Donahue, whom appellant admits is a civil engineer and land surveyor of ability. · Mr. Donahue heard the testimony of Peter and Mack Howard, and was asked, assuming that such evidence was true and taking the description contained in the declaration, whether or not he could locate the land. We think it may be fairly said that his answer was in the negative. But as this question was one of "pure fact" it was for the trial court to decide, and after a careful reading and consideration of a voluminous and somewhat difficult record, we cannot say that the trial court was wrong in its holding.

[4] Under issue four the question is asked "Did the court err in sustaining the objection of counsel for defendants to the introduction in evidence of the declaration of homestead," and "in omitting to pass upon a subsequent offer in evidence . . . before the termination of the case or at all?" The record disposes of appellant's contentions in this regard. It shows that at the trial in the lower court counsel for appellant offered the declaration of homestead in evidence four or more times. Three times he withdrew the offer. When the instrument was offered for the last time the trial judge expressed doubt as to whether or not a proper foundation had been laid for its introduction. He said that he would admit it subject to motion to strike, which was then made. "The point I had in mind," said the court, "was that I could decide this question when all the

evidence was in, and decide the whole thing at the same time. It might be better to reserve the ruling upon the homestead until that is all in."

Mr. Wessels: "So far as that is concerned I don't believe there would be any objection on our part to wait until the evidence is all in with reference to the admission of this homestead with the permission to renew our offer after the testimony is put in by the defendants."

And after appellant had rested, the trial judge said: "It is considered that the homestead is not in evidence but it is offered, and the ruling on it will be reserved." Thereafter respondents rested and the court said: "Anything further?"

Mr. Wessels: "Before we rest we now offer in evidence the declaration of homestead heretofore offered and under the ruling of the court with permission to re-offer the declaration of homestead."

By the Court: "It is already considered offered and the ruling of the court upon its admission is reserved."

Appellant complains that the record does not show that the court finally ruled upon the admissibility of the homestead, and that such omission is error. It is clear that the procedure followed by the court was with the acquiescence of appellant. The record shows that the principal subject of inquiry during the trial was concerning the identification of the lands described in the declaration of homestead. It seems to us to be wholly immaterial whether or not the declaration of homestead was admitted in evidence during the course of the trial, because if it had been admitted the court might well have held as it did, that the parol evidence was insufficient to aid in the location with reasonable certainty of the land described in the instrument. Surely it is obvious that the ruling of the court was against the validity of the homestead, otherwise we would not now be considering this appeal.

Under issue five appellant argues that the deeds relied upon by respondents were invalid because not executed by both husband and wife. It is conceded that if there was a valid declaration of homestead the deeds relied upon by respondents conveyed no title. Under issue six appellant specifies that the trial court erred in overruling his objections to the admission of said deeds. This likewise relates

to the question of the validity of the declaration of home
stead and requires no discussion.

In issue seven appellant says that there was error by the
trial court in not sustaining a motion to strike the deeds
from evidence, or to decide the point of their admissibility
before the termination of the case. The record shows, as
with the declaration of homestead, that the deeds were
offered in evidence, there was an objection and the deeds
were admitted subject to a motion to strike, the trial court
reserving its ruling.

[5] The specification of error in issue eight is as fol-
lows:

"The Court erred in not holding and deciding that the
judgment rendered by the Superior Court of Mendocino
County on August 20, 1918, in the case wherein Lucia C.
Hopkins as Administratrix of the Estate of Ann Cleveland,
deceased was plaintiff and Mack Howard as Administrator
of the Estate of Rachael Howard, deceased was defendant,
was *res adjudicata* as to the same issues and between the
same parties in this action, and in sustaining the objection
of counsel for the defendants to the introduction in evidence
of the judgment-roll in that case."

Before this action was commenced a stipulation was en-
tered into between the parties to the cause referred to in
issue eight, which provided in part:

"2. That the plaintiff need take no further steps on her
appeal aforesaid until after the judgment in such action, so
to be commenced (referring to the case at bar), shall have
become final and that the time of said plaintiff and appel-
lant to file her transcript on appeal or her opening brief
or to take any other step necessary to perfect her record
on appeal shall be and is hereby extended to and including
thirty days after judgment in said action so to be brought
shall become final—it is the intention hereof that the said
plaintiff and appellant shall have the right and she is
hereby given the right to have said judgment appealed from
reviewed on appeal on the facts and the merits in case final
judgment shall be that the Lucy Howard land is not the
property of the estate of Rachael Howard, deceased;

"3. That should it be finally adjudged that the Lucy
Howard land is the property of the estate of Rachael How-
ard, the appeal from the judgment in *Hopkins* v. *Howard*

shall be immediately dismissed and the land in controversy deemed a portion of the estate of Rachael Howard.''

It appears from the foregoing that the judgment in the case of *Hopkins* v. *Howard* was appealed from, and the effect of this stipulation is to regard that appeal as pending. Where an appeal is pending, a final judgment, unless satisfied, is not evidence in bar of recovery in another action for the same cause (*Harris* v. *Barnhart,* 97 Cal. 546 [32 Pac. 589]). Only final judgment can be pleaded or proven as *res adjudicata* (*Estate of Ricks,* 160 Cal. 467 [117 Pac. 539]).

[6] In issue nine appellant complains that the trial court erred in sustaining the objection to the introduction in evidence of the testimony of certain witnesses (now dead) in the case of *Hopkins* v. *Howard.* The record does not show that such testimony was offered or marked for identification, and there is nothing before this court which will enable us to determine whether the testimony was admissible.

Issue ten is directed toward the rulings of the court in passing upon the admission of certain evidence. It is insisted that error was committed in sustaining objections to numerous questions asked and answered. Ruling on the admission or rejection of the evidence was rendered difficult by the fact that the principal witnesses testifying had lived for years on or near the land, and very naturally were inclined to state as facts relating to the time of entry on the land, and the time of the making of the declaration of homestead, and the extent of the land entered on, not only their conclusions but matters which were clearly shown to have been established several years later, or matters which had been accepted for many years as current neighborhood tradition. We have read the record and we believe that the learned trial judge committed no errors in passing upon the admissibility of evidence which are made the subject of this assignment.

In issues eleven and twelve appellant attacks the findings and judgment of the trial court as being contrary to law. It is also claimed that the findings and judgment are not supported by the evidence. These issues are submitted on the entire record. Likewise, issue thirteen, which is that the court erred in denying appellant's motion for new trial. For the reasons heretofore herein given by us,

it is manifestly unnecessary to discuss these last assignments of error.

Our opinion, based upon a painstaking study of the evidence and consideration of the points advanced by appellant and the law appertaining thereto, is that the judgment and order of the trial court. appealed from should be affirmed. It is so ordered.

Tyler, P. J., and Knight, J., concurred.

. A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 26, 1924.