[Civ. No. 3530. Third Appellate District.—August 16, 1928.]

J. J. ALTMAN, Appellant, v. SOPHIA L. BLEWETT, Respondent.

[Civ. No. 3531. Third Appellate District.—August 16, 1928.]

CHARLES E. ANDERSON et al., Appellants, v. SOPHIA L. BLEWETT, Respondent.

Wm. P. Mealey for Appellants.

Haas & Dunnigan for Respondent.

BARTLETT, J., *pro tem.*—It has been stipulated that these two appeals may be heard and determined together, the issues involved being practically identical in both cases. Both actions are for the specific enforcement of contracts for the conveyance of real property, or for damages in case specific performance cannot be decreed.

In action No. 3530, *Altman* v. *Blewett,* conveyance from defendant to plaintiff of the southerly twenty feet of lot 6 of the George A. Blewett Home Tract, as per map book 3, page 53, of Los Angeles County records, is asked, or in the event this cannot be decreed, for damages in favor of plaintiff for $5,580. In action No. 3531, *Anderson and Anderson* v. *Blewett*, conveyance from defendant to plaintiffs of the southerly twenty feet of lot 12 of the George A. Blewett Home Tract, as per map book 3, page 53, Los Angeles County records, is asked, or, in the event this cannot be decreed, for damages in favor of plaintiffs for $1,190.

An answer to the complaint was filed in both actions and when the cases came on for trial, objections were sustained

to the admission of any evidence on behalf of plaintiffs in support of the allegations in the complaints, and judgments were entered for defendant and against plaintiffs in both actions. From these judgments plaintiffs have taken their appeals, the same being presented on a certified copy of the judgment-roll in each action.

In action 3530 plaintiff and defendant are the original parties to the contract of sale on which the controversy is based, while in action 3531 the plaintiffs Charles E. Anderson and Segrid Anderson are the successors in interest of Mary Altman, the original party to the contract of sale with defendant Sophia L. Blewett, on which the controversy is based.

The contract involved in action 3530 is set forth in full in the complaint and reads as follows:

"Los Angeles, Nov. 20, 1905.

"This contract between George A. and Sophia L. Blewett and J. J. Altman for the purchase of lot 5 of the George A. Blewett Home Tract. The price to be paid for said lot 5 being four hundred and fifty dollars, $450.00, two hundred dollars to be paid at the execution of said contract, the balance of the money on said lot 5 to be paid on or before two years from date, the sum being two hundred and fifty dollars $250.00 at the rate of ten per cent enterst per annum, the enterest to be paid semi-annually, and if buyer pays taxes on said lot 5, a rebate of three per cent is to be returned to said J. J. Altman, and when balance of of money is paid on said lot 5 a deed and certificate of title will be given free of charge to J. J. Altman and in case that the street is put through lots 6, 12 and 18, the remaining twenty feet, more or less of said lot 6 can be bought for the same price as lot 5 is sold at. A building restriction on said lot 5 to be nothing less than $1500.00, fifteen hundred dollars and the main building not to be erected any closer than twenty five feet from the lot line.

"Restriction to hold good for five years.

"SOPHIA L. BLEWETT.
"GEORGE A. BLEWETT.
"J. J. ALTMAN."

The contract involved in action 3531 is set forth in full in the complaint and reads as follows:

"Los Angeles, April 27, 1906.

"This contract between George A. & Sophia L. Blewett and Mary Altman, for the purchase of lot 11, of the George A. Blewett Home Tract. The price to be paid for said 11, being $550.00, five hundred & fifty dollars, two hundred to be paid at the execution of said contract, the balance of the money, three hundred and fifty dollars due on said lot 11, to be paid on or before eighteen months from date of said contract at the rate of ten per cent interest per annum, the interest to be paid semi-annually, and if buyer pays the taxes on said lot 11, a rebate of three per cent is returned to said Mary Altman. And when balance on said lot 11 is paid, a deed, & Certificate of Title, will be given free of charge to Mary Altman. And in case that the street is put through lots 6, 12 & 18, the remaining 20 feet (more or less), of said lot 12 can be bought for the same price, lot 11 is sold for, building restrictions on said lot 11 to be nothing less than fifteen hundred dollars $1,500.00, the main building not to be erected any closer than twenty-five feet from the lot line. Building restrictions to hold good for five years.

"SOPHIA L. BLEWETT.
"GEORGE A. BLEWETT."

"MARY ALTMAN."

The material allegations averred in the complaint are: Ownership and subdivision and placing upon the market prior to November 20, 1905, by defendant of the George A. Blewett Home Tract situated in the city of Los Angeles, between Vermont Avenue and Hoover Street of that city; location of lots 5 and 11 of said tract as being back to back, lot 5 facing easterly on Hoover Street and lot 11 facing westerly toward Vermont Avenue, and lot 6 of said tract lying immediately north of lot 5 and lot 12 immediately north of lot 11, lot 6, when the contract was made on November 20, 1905, being 50 feet in width, and lot 12, when the contract was made on April 27, 1906, being 50 feet in width; entry into on November 20, 1905, by defendant with plaintiff Altman of the contract of that date concerning lots 5 and 6 above set forth, and entry into on April 27, 1906, by defendant with predecessors in interest of plaintiffs Anderson of the contract of that date concerning lots 11 and 12 above set forth; representation by defendant to the

purchasers of lot 5 and lot 11 at the time of making the contracts that Forty-first Drive would be opened through and opposite lots 6 and 12 of the tract as a public street from Vermont Avenue to Hoover Street; declaration of intent of defendant to dedicate for street purposes and as a part of Forty-first Drive the northerly 30 feet of lots 6 and 12; that after the dedication of the northerly 30 feet of lots 6 and 12 there would remain 20 feet off the southerly side of lots 6 and 12 to be used in connection with lots 5 and 11; the giving by defendant to plaintiff Altman the right and option to purchase the remaining 20 feet of lot 6 in case the street is put through lots 6, 12, and 18 for the same price lot 5 is sold at, and the giving by defendant to the purchasers of lot 11 the right and option to purchase the remaining 20 feet of lot 12 in case the street is put through lots 6, 12 and 18, for the same price lot 11 is sold at; that the right to purchase the remaining 20 feet of lots 6 and 12 by the purchasers of lots 5 and 11 was a part of the consideration of the contracts to purchase lots 5 and 11; that the purchasers would not have purchased lots 5 and 11 without the right given to purchase the remaining 20 feet of lots 6 and 12; that when the contracts were made defendant owned the lands lying northerly of lots 6 and 12 from which land the northerly 30 feet of Forty-first Drive opposite lots 6 and 12 was to be taken; that after making the contracts defendant sold the land north of lots 6 and 12 and the purchaser thereof dedicated for street purposes the northerly 30 feet of lots 6 and 12; that on November 6, 1906, defendant made, executed, and delivered to plaintiff Altman a bargain and sale deed conveying to plaintiff lot 5, and that on June 27, 1907, defendant made, executed, and delivered to Mary Altman, a predecessor in interest of plaintiffs Anderson, a bargain and sale deed of lot 11; that after the making of these deeds, and on November 3, 1913, defendant commenced an action against plaintiff Altman, and a similar action against the predecessor in interest of plaintiffs Anderson to quiet the title to lots 6 and 12 by which actions defendant sought to clear the title to said lots of any rights vested in the defendant Altman to lot 6 and of any rights vested in the predecessor in interest of the plaintiffs Anderson to lot 12 to purchase the southerly 20 feet of said

lots upon the opening of Forty-first Drive; that these complaints were duly answered and said actions tried in the superior court of Los Angeles County, and judgments rendered therein whereby it was decreed that defendant was the owner of lots 6 and 12, subject to the right of plaintiff Altman to purchase the southerly 20 feet of lot 6 for the sum of $9 per front foot, with interest thereon at seven per cent per annum from November 20, 1905, whenever Forty-first Drive shall be opened to a width of 60 feet from Vermont Avenue to Hoover Street opposite to lots 6, 12, and 18 of the George A. Blewett Home Tract, and subject to the right of the predecessor in interest of defendants Anderson to purchase the southerly 20 feet of lot 12 for the sum of $11 per front foot with interest thereon at seven per cent per annum from April 27, 1906, whenever Forty-first Drive shall have been opened a width of 60 feet from Vermont Avenue to Hoover Street opposite lots 6, 12, and 18 of the George A. Blewett Home Tract; that the sum of $9 per front foot was the price paid for lot 5, and $11 per front foot the price paid for lot 11; that after the rendering of said judgments and on or about September 13, 1922, the defendant in the action involving title to lot 12 transferred and conveyed lot 11 and all his right, title, and interest in and to lot 12 and all his right, title, and interest in and to the contract relating to lot 12 to one Herbert E. White, who thereafter transferred and conveyed the same to the defendants Anderson; that on June 16, 1923, the city of Los Angeles commenced an action in the superior court of Los Angeles County to condemn for street purposes the northerly thirty feet of lots 6 and 12 and such additional property as was necessary to open Forty-first Drive as a 60-foot street through and opposite lots 6 and 12 from Vermont Avenue to Hoover Street; that thereafter such proceedings were had in this condemnation suit that a final judgment was entered condemning said property for street purposes, the judgment being entered on November 10, 1924; that thereupon Forty-first Drive was opened as a 60-foot street from Vermont Avenue to Hoover Street through and opposite lots 6 and 12; that thereafter plaintiffs accepted the options to purchase the southerly 20 feet of lots 6 and 12 and tendered defendant the amounts speci-

fied in the contracts and judgments as payment in full for the purchase price of the southerly 20 feet of said lots 6 and 12, with interest thereon at seven per cent per annum from the date of the contracts, and demanded a conveyance of said properties; the amount tendered by plaintiff Altman being the sum of $420, and the amount tendered by plaintiffs Anderson being the sum of $510; that plaintiff Altman accepted said option and made said tender on November 15, 1924, and plaintiffs Anderson accepted said option and made said tender on January 2, 1925, and that defendant refused to accept said moneys and refused to convey said properties.

The complaints allege readiness, willingness, and ability on the part of plaintiffs to purchase the southerly 20 feet of lots 6 and 12 at all times since the date of the contracts whenever Forty-first Drive should be opened from Vermont Avenue to Hoover Street, and it is alleged that the reasonable market value of the southerly 20 feet of lots 6 and 12 at the time of the making and execution of the contracts did not exceed $9 and $11 per front foot respectively, and that the consideration so to be paid defendant was and is adequate consideration for the properties. In a second cause of action it is alleged in action 3530 that the market value of the southerly 20 feet of lot 6 when the tender of $420 was made therefor on November 15, 1924, was not less than $6,000, and in action 3531 in a second cause of action it is alleged that the market value of the southerly 20 feet of lot 12 when the tender of $510 was made therefor on January 2, 1925, was not less than $2,500.

The record shows that the complaint in action 3530 was filed in the superior court of Los Angeles County on December 18, 1924, and that the complaint in action 3531 was filed on January 9, 1925.

But one question presented by each of the appeals is material for determination and that is what is the effect of the judgments made by the superior court of Los Angeles County in the actions to quiet title concerning these lots and the contracts involved, and which judgments are pleaded in the two complaints.

Section 738 of the Code of Civil Procedure provides that an action may be brought by any person against another who claims an estate or interest in real or personal property

adverse to him, for the purpose of determining such adverse claim. The purpose and province of actions to quiet title are clearly stated in the case of *Peterson* v. *Gibbs,* 147 Cal. 1 [109 Am. St. Rep. 107, 81 Pac. 121], where it is said:

"Such an action is brought as authorized by the statute, 'for the purpose of determining' any adverse claim that may be asserted therein by a defendant to the land in controversy, and this does not mean that the court is simply to ascertain, as against a plaintiff shown to have a legal interest, whether or not such defendant has some interest, but also that the court shall declare and define the interest held by the defendant, if any, so that the plaintiff may have a decree finally adjudicating the extent of his own interest in the property in controversy. The object of the action is to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to."

That such is the purpose and object of this species of action is also set forth in *Yuba Investment Co.* v. *Yuba Con. Gold Fields,* 199 Cal. 203 [248 Pac. 672]; *Miller* v. *Oliver,* 54 Cal. App. 505 [202 Pac. 172]; *Howard* v. *Howard,* 67 Cal. App. 56 [226 Pac. 984]; *Akley* v. *Bassett,* 68 Cal. App. 270 [228 Pac. 1057].

Defendant Sophia L. Blewett was plaintiff in both of the suits to quiet title, the judgments in which are pleaded in these actions, and it was on her initiative that the plaintiff in action 3530 and the predecessor in interest of plaintiffs in action 3531 came into court, and set forth their claim to purchase the southerly 20 feet of lots 6 and 12 in the George A. Blewett Home Tract whenever Forty-first Drive in the city of Los Angeles shall have been opened to a width of 60 feet from Vermont Avenue to Hoover Street opposite lots 6, 12, and 18 of the tract. These asserted claims the trial court determined to be good and valid, it being decreed in the action that the answering defendants had a right to purchase the southerly 20 feet of lot 6 and the southerly 20 feet of lot 12 at a fixed and determined price per front foot whenever Forty-first Drive in the city of Los Angeles shall have been opened to a width of 60 feet from Vermont

Avenue to Hoover Street opposite to lots 6, 12, and 18. There is nothing uncertain about the extent of the interest which it was determined the defendants in the suits to quiet title had in the properties, nor as to when that interest would ripen into a right to demand a conveyance from the defendant here upon the payment to her of a fixed sum of money. The validity of the two contracts and their extent were completely adjudicated. The time for exercising the options did not arrive until the judgment was entered in the condemnation action brought by the city of Los Angeles, opening up Forty-first Drive, which was entered on November 10, 1924. Five days thereafter, on November 15, 1924, the plaintiff in action 3530 tendered defendant $420 in payment for the southerly 20 feet of lot 6 and demanded a deed therefor, and on January 2, 1925, the plaintiffs in action 3531 tendered defendant $510, in payment for the southerly 20 feet of lot 12 and demanded a deed therefor. Under the judgments in the suits to quiet title no conclusion can be reached other than plaintiffs herein were entitled to deeds of conveyance from defendant upon the making of the tenders of purchase price and demand for deeds for the southerly 20 feet of lots 6 and 12.

The claim of defendant that plaintiffs are barred from the relief sought by reason of equitable laches because payment was not tendered and deeds demanded immediately after the entry of the judgments in the suits to quiet title is without merit upon the facts set forth in the record. In both contracts and judgments the time when the right to a conveyance to the owners of lots 5 and 11 was to arise was when a street 60 feet wide was extended through lots 6, 12, and 18. There is no question about what amount of money was to be paid to entitle plaintiffs to a conveyance. The decree determines that to be a certain rate per front foot for the southerly twenty feet of each lot and interest thereon at seven per cent per annum from the date of the contracts regarding lots 5 and 11.

The facts in the cases at bar are entirely different from those in *Kleinclaus* v. *Dutard*, 147 Cal. 245 [81 Pac. 516]; and *Marsh* v. *Lott*, 156 Cal. 643 [105 Pac. 968], relied upon to support the claim of equitable laches. In the first of these cases plaintiff permitted twenty-five years to pass

before taking any steps to enforce a right which had existed all of that time, while in the second case plaintiff waited three years after a defendant had repudiated an option, before bringing his action. The few days elapsing in this case after plaintiffs became entitled to demand a conveyance, before making their demand, cannot be regarded as in any way constituting equitable laches.

■ The defendant argues that plaintiffs in action 3531 cannot enforce the option given Mary Altman, as successor in interest of said Mary Altman. This contention is based upon a claim that the covenant in defendants' agreement with Mary Altman was a personal one not running with the land. The contract entered into was to convey lot 11 and part of lot 12 upon the happening of certain events. It was an agreement to convey Mary Altman an interest in lot 12, and it cannot be questioned that Mary Altman had a right to convey this interest. There are no words of limitation in the option to purchase forbidding its assignment, or that it was given because of a peculiar trust or confidence reposed in the optionee. (25 Cal. Jur., p. 509, sec. 37.; *Simmons* v. *Zimmerman,* 144 Cal. 256 [1 Ann. Cas. 850, 79 Pac. 451]; *Blakeman* v. *Miller,* 136 Cal. 138 [89 Am. St. Rep. 120, 68 Pac. 587].) ■ Defendant urges that the contracts sued upon are not fair and reasonable as to defendant and because of this that they cannot be specifically enforced. In this regard the question of fairness and reasonableness must be determined from the conditions existing at the time the contracts were made. The fact that the property has increased in value since the contracts were made has no bearing upon the question as to whether or not the contracts should be specifically enforced. The price the owner was to be paid was the fair market value of the property when the contracts were made. The possibility of an increase in value was an element to be taken into consideration when the contracts were entered into. ■ It cannot be said that the contracts here involved were unfair, unequal or inequitable at the time of their inception. No wrongful or inequitable act on the part of plaintiffs concerning these contracts or arising therefrom appears from the facts alleged in the pleadings that would preclude the relief they are asking. They are seeking an interest in

properties in pursuance of contracts which have been passed upon and adjudged legal and valid by a court of competent jurisdiction, in actions invoked by the defendant herein.

Each of the judgments appealed from is reversed.

Plummer, J., and Finch, P. J., concurred.