[Civ. No. 21235.   First Dist., Div. Two.   Nov. 18, 1964.]

RAYNOLD VIOTTI et al., Plaintiffs, Cross-defendants and Respondents, v. BRUNO GIOMI, Defendant, Cross-complainant and Appellant; BAY COUNTIES TITLE GUARANTY COMPANY, Cross-complainant, Cross-defendant and Appellant.

Robert Allan Hansen for Defendant, Cross-complainant and Appellant.

Peart, Baraty & Hassard, Joseph S. Rogers and Richard G. Logan for Cross-complainant, Cross-defendant and Appellant.

James Martin MacInnis for Plaintiffs, Cross-defendants and Respondents.

TAYLOR, J.—This case involves an appeal by defendant and cross-complainant Giomi, an unsatisfied judgment creditor, from a judgment quieting title in plaintiffs Viotti to property which Giomi had purchased at an execution sale. The court found that plaintiffs had a valid homestead and that Giomi had failed to comply with section 1245 of the Civil Code. The cross-defendant title company appeals from the judgment quieting title in plaintiffs and also from a judgment for Giomi holding it liable for failure to note plaintiffs' homestead in its litigation report to Giomi.

The facts are not in dispute. In 1941, plaintiffs purchased the property at 27-29 14th Avenue in San Francisco for $12,500. It consisted of two five-room flats. In May 1946, they filed and recorded a declaration of homestead which described the premises as a ''ten-room dwelling'' with an actual cash value of $5,000.

In January 1955, Giomi obtained a $9,000 judgment against

plaintiffs for fraudulent misrepresentation concerning the 1946 sale of an interest in the Lido Bakery. Plaintiffs having failed to pay the judgment, Giomi's attorney Hansen decided to obtain writs of execution against plaintiffs' real property in San Francisco and San Mateo Counties. Before doing so, he contacted the title company by telephone and ordered two litigation reports at a charge of $25 each. He explained that he was preparing to levy execution and wanted to determine whether there were any liens or encumbrances affecting title. The report which Hansen received on the San Francisco property indicated that it was subject to current taxes and the lien on the Giomi judgment, but mentioned no other liens or encumbrances.

A writ of execution was levied on the San Francisco property on February 18, 1957, and it was noticed for public sale to be held April 3, 1957. After receiving a copy of the notice of sale, plaintiffs informed their attorney of the homestead. They attended the sale with the attorney and on his advice made no mention of the homestead's existence. Giomi was the only bidder and purchased the property for $16,607.21, the amount of his judgment plus interest and costs, including the cost of the execution sale.

More than 60 days after the writ of execution was levied, plaintiffs filed this quiet title action, alleging that Giomi had no interest in the property as he failed to comply with section 1245 of the Civil Code. Giomi answered claiming ownership of the property under his sheriff's deed, asserting as a special defense that plaintiffs' declaration of homestead contained a false and untrue description of the premises and fraudulent statement of value, and filed a cross-complaint against the title company for failure to mention the homestead in its litigation report. The title company answered citing its amended litigation report issued in June 1957, and filed a cross-complaint against plaintiffs.

The trial court, in quieting plaintiffs' title, found that the homestead was legally sufficient, that Giomi's asserted lien no longer affected the property because he failed to comply with sections 1245 et seq. of the Civil Code, and that plaintiffs were under no duty to inform Giomi of the homestead. The court also found that the title company knew the purpose of the original litigation report, that their negligence in omitting the homestead therefrom resulted in Giomi's failure to comply with section 1245 of the Civil Code, and awarded Giomi judgment against the company for the total amount due in principal, interest and costs on his original judgment

against plaintiffs in the sum of $16,607.21, plus $750 attorney's fees. The court concluded that upon payment thereof, the title company would be subrogated to Giomi's original judgment rights against plaintiffs, except the right to execute on the San Francisco property.

### THE QUIET TITLE ACTION

Appellants first argue that the homestead did not comply with section 1263, subdivision 4, of the Civil Code,[1] since plaintiffs in their declaration fraudulently estimated the actual cash value of their property to be $5,000 even though they had purchased it in 1941 for $12,500 and admittedly thought it to be of even greater value at the time the homestead was recorded. ■ While the courts have held that a complete failure to state an actual estimate in a declaration renders a homestead invalid (*Ashley* v. *Olmstead,* 54 Cal. 616; *Ames* v. *Eldred,* 55 Cal. 136; *Lynch* v. *Stotler* (9 Cir. 1954) 215 F.2d 776), they have required only substantial compliance and been most liberal in approving homesteads where an estimate is entered even though it does not properly reflect the true cash value of the property (*Schuyler* v. *Broughton,* 76 Cal. 524 [18 P. 436]; *Southwick* v. *Davis,* 78 Cal. 504 [21 P. 121]; *Samuels* v. *Delucchi* (9 Cir. 1961) 286 F.2d 504; *Curzon* v. *Dulgarian* (9 Cir. 1961) 287 F.2d 30).

In *Southwick, supra,* the court said: "It is difficult to imagine the precise purpose of this provision. It is admitted on all hands that the correctness or incorrectness of the estimate has no effect whatever upon the validity of the claim. If the estimate were ten times more than the actual value, or only one tenth as much, the claim would not be bad on that account." (P. 507.)

■ The plaintiffs here entered the $5,000 estimate on the advice of their attorney and in view of the strong public policy expressed in the decisions favoring the preservation of family homesteads (*Johnson* v. *Brauner,* 131 Cal.App.2d 713 [281 P.2d 50]), we conclude that the trial judge was justified in holding that plaintiffs had in good faith substantially complied with section 1263, subdivision 4, of the Civil Code. The defendants failed to show that they were in any way prejudiced by the inadequate evaluation in plaintiffs' declaration.

---

[1]"The declaration of homestead must contain:

". . . . . . . . . .

"4. An estimate of their actual cash value."

■ Appellants next argue that plaintiffs failed to comply with section 1263, subdivision 3, of the Civil Code[2] because the declaration fraudulently referred to the premises in question as a "ten-room dwelling house," when they actually consisted of two five-room flats. The term "ten-room dwelling" was used on the advice of plaintiffs' attorney who thought this was the case although he had never seen the property. Here, as in the matter of the estimated cash value, the rule of liberal construction applies and it has long been held that a description in a declaration of homestead need not be more particular than is required in the case of an ordinary conveyance (*Howard* v. *Howard*, 67 Cal.App. 56 [226 P. 984]; *Oktanski* v. *Burn*, 138 Cal.App.2d 419 [291 P.2d 954]).

■ Furthermore, a homestead can be declared on property containing more than one residence accommodation. In *Estate of Levy*, 141 Cal. 646 [75 P. 301, 99 Am.St.Rep. 92], the declaration described the premises as a "dwelling house" while the extrinsic evidence showed that the building was composed of three flats having separate entrance doors in the front. The court stated that when the statute speaks of the "dwelling house," it means the building which is occupied as a dwelling house by the family and not such portions of the building as may be actually used by the family for residence purposes. ■ The use of a building partly or even chiefly for business purposes or the renting a part of it is not inconsistent with the right of homestead provided it is and continues to be the bona fide residence of the family (*Heathman* v. *Holmes*, 94 Cal. 291 [29 P. 404]; *McKay* v. *Gesford*, 163 Cal. 243 [124 P. 1016, Ann.Cas. 1913E 1253, 41 L.R.A. N.S. 303]; *Vincenzini* v. *Fiorentini*, 2 Cal.App.2d 739 [38 P.2d 876]). Recently, we affirmed the choice of a large apartment house as a probate homestead (*Estate of Nelson*, 224 Cal.App.2d 138, 144-145 [36 Cal.Rptr. 352]).

■ The trial court properly concluded that the Viottis had made their declaration describing the premises in good faith, had substantially complied with the requirements of the statute, and the fact that there were two separate living quarters in the building did not invalidate the homestead.

Appellants argue that even if the homestead were valid, the trial court erred in quieting title in the Viottis.

Section 1245 of the Civil Code provides: "When an execu-

---

[2] "The declaration of homestead must contain:

"...........................

"3. A description of the premises."

tion for the enforcement of a judgment obtained in a case not within the classes enumerated in section 1241 is levied upon the homestead, the judgment creditor may at any time within sixty days thereafter apply to the superior court of the county in which the homestead is situated for the appointment of persons to appraise the value thereof, and if such application shall not be made within sixty days after the levy of such execution the lien of the execution shall cease at the expiration of said period, and no execution based upon the same judgment shall thereafter be levied upon the homestead.'' (Enacted 1872. As amended Code Amends. 1880, ch. 41, p. 7, § 18; Stats. 1911, ch. 436, p. 888, § 1.)

Appellant Giomi was unaware of the homestead and failed to proceed with the sixty-day period as provided by statute. The homestead is a creature of statute and has the obvious purpose of permitting a debtor to hinder and defeat the claims of his creditors (*Johnson* v. *Brauner,* 131 Cal. App.2d 713, 719 [281 P.2d 50]). A judgment lien is likewise purely a creature of statute. There can be no judgment lien upon the excess of the value of the homestead property beyond the statutory exemption unless the creditors have fully complied with section 1245 of the Civil Code, and the creditor is afforded no alternative procedure (*Boggs* v. *Dunn,* 160 Cal. 283 [116 P. 743]). The debtor's proper remedy where a judgment creditor has failed to follow the statutory process for reaching homesteaded property is by an action to quiet title (*Graham* v. *Hunt,* 119 Cal.App. 586 [7 P.2d 186]). The trial court properly concluded that the execution lien ceased by virtue of Giomi's failure to comply with the requirements of section 1245 (*Magneson* v. *Pacific Mfg. Co.,* 26 Cal.App. 52 [146 P. 69]; *Palen* v. *Palen,* 28 Cal. App.2d 602 at pp. 606-607 [83 P.2d 36]).

Appellants next argue that the court erred in quieting plaintiffs' title because they were guilty of inequitable conduct in not informing Giomi of the homestead at the execution sale. Such disclosure would generally be required in equity proceedings but not in a homestead situation such as here involved (*Graham* v. *Hunt,* 119 Cal.App. 586, 589 [7 P.2d 186]; *Lucci* v. *United Credit & Collection Co.,* 220 Cal. 492 [31 P.2d 369]).

In *Schmidt* v. *Denning,* 117 Cal.App.36, the court said at page 39 [3 P.2d 322]: ''As contended by the plaintiffs it may be said that it follows that a homestead under some circumstances may be used to protect transactions bordering

on fraud. Be that as it may the courts must follow the Constitution and the statutes enacted under it. 'With the policy of the law or the abstract morality of a particular transaction we have nothing to do. The doctrine bearing upon conveyances made to hinder, delay or defraud creditors has no application to the creation of a homestead.' (*Beaton* v. *Reid,* 111 Cal. 484, 487 [44 P. 167].)''

The Viottis had no fiduciary duty to advise their judgment creditor Giomi as to the method which would best enable him to reach their property. Their attendance and silence at the execution sale were proper. The parties were dealing at arm's length. They had engaged in prior litigation (*Giomi* v. *Viotti,* 144 Cal.App.2d 714 [301 P.2d 597]) and their relationships had been hostile for a number of years. No equities or duties had arisen between them.

Appellants cannot rely on *Jefferson* v. *Tom,* 52 Cal.App. 2d 432 [126 P.2d 387]. There, the homestead claimants over a period of five years permitted the bona fide purchasers of the property to demolish buildings, level a lot, and spend about $2,500 for improvements. The case was one of unjust enrichment, and the court entered judgment adverse to the claimants only after they had refused to reimburse the purchasers for the improvements. Likewise, *Grady* v. *Bramlet,* 59 Cal. 105 and *Shumaker* v. *Biscailuz,* 130 Cal.App.2d 414 [278 P.2d 939], cited by appellants, are not relevant as the claimants in those cases were not entitled to the protection of sections 1245 and 1246 of the Civil Code. The trial court properly concluded that the plaintiffs had no duty to inform Giomi or his attorney of the homestead declaration.

### THE LIABILITY OF THE TITLE COMPANY

The title company first argues that the trial court erred in holding it liable for negligence on its original litigation report to Giomi because the report was not a policy of title insurance nor guaranty, clearly stated on its face that there was no liability thereunder, and that at most, its liability is only contractual.

There is no merit in these contentions. The uncontroverted evidence indicates that Giomi's attorney carefully explained the purpose of the report to the title company's representative. He informed her that the report was needed to determine the status of the property on which he proposed to levy execution. After Giomi's attorney received the report, he noted that it was not reasonable for the Viottis to permit interest to run on the judgment. He again contacted the

title company and asked whether it was possible that a mistake had been made. He was again informed that there was not anything that was not shown on the original report. Thereafter, in complete reliance on the report, Giomi's attorney proceeded with the execution and sale. The title company's title searcher testified that there was nothing special or unusual about the recording of a homestead declaration.

An abstract of title is prepared by a skilled searcher and supposedly contains whatever appears in the records affecting the title (*Smith* v. *Taylor*, 82 Cal. 533 [23 P. 217]). Whether the report was designated a preliminary title report or a litigation report, the purpose for which it was ordered and to be used was not open to doubt. ▮ Insofar as the abstracter assumes to describe instruments of record, due care and skill require that such description be accurate. The person employing the abstracter has the right to rely on the truth and accuracy of his work in regard to any essential facts of record unless a mistake is plainly apparent (*J. H. Trisdale, Inc.* v. *Shasta etc. Title Co.*, 146 Cal.App. 2d 831, 837 [304 P.2d 832]).

▮ The words ''Preliminary report only. No liability hereunder'' printed on the litigation report are not sufficient to exculpate the title company from responsibility for its own negligent acts. ▮ An agreement insulating one from liability for his own negligence must specifically so provide and is strictly construed against the party asserting the exemption, especially where he is the author of the agreement (*Sproul* v. *Cuddy*, 131 Cal.App.2d 85 [280 P.2d 158]; *Basin Oil Co.* v. *Baash-Ross Tool Co.*, 125 Cal.App.2d 578 [271 P.2d 122]).

▮ Under the old rule, an abstracter's liability in preparing a report such as here in question was contractual only but recovery is now permitted either on the basis of contract or tort (*Hawkins* v. *Oakland Title Ins. & Guar. Co.*, 165 Cal. App.2d 116, 125-126 [331 P.2d 742], adopting the rule of section 552 of the Restatement of Torts). The trial court properly found that the title company was liable to Giomi for its negligence in omitting the homestead from the original report.

### THE DAMAGES AWARDED TO GIOMI

▮ The title company next argues that Giomi did not meet the burden of proving his damages and that the amount was erroneously computed. The trial court awarded Giomi damages against the company in the sum of $16,607.21 (the

amount of his judgment against the Viottis, plus interest to the date of the execution sale, together with costs, including the costs of sale) and attorney's fees of $750. The title company is responsible only for damages proximately caused by its negligence in failing to disclose the homestead in the original litigation report (Civ. Code, § 3333).

If the litigation report had disclosed the existence of the homestead, Giomi would have proceeded with the appointment of appraisers and a forced sale pursuant to sections 1245 et seq. of the Civil Code. In order to ascertain the damages in the instant case, it is necessary to consider these and other related provisions. The sale would take place only if the property were appraised in excess of the applicable homestead exemption and all aggregate liens and encumbrances (Civ. Code, § 1255; *Southern Pacific Milling Co.* v. *Milligan*, 15 Cal.2d 729 [104 P.2d 654]). If the sale is made, the proceeds must be applied first to the discharge of all liens and encumbrances, second to the homestead claimant in the amount of the exemption, and third to the satisfaction of the execution (Civ. Code § 1256; *Chase* v. *Bank of America*, 227 Cal.App.2d 259 [38 Cal.Rptr. 567]). Giomi would be entitled to the satisfaction of his judgment only to the extent that the appraised value of the property exceeded the existing liens plus the exemption. Thus, the title company can be held responsible only for this amount plus the costs of the execution sale which were proximately caused by its negligence and the attorney's fees of $750. The trial court erred in awarding Giomi damages for the entire amount of his judgment plus interest and costs.

The judgment is reversed as to the portion relating to the amount of damages awarded to Giomi against the title company and subrogating the title company to his total rights in the original judgment against plaintiffs, and affirmed in all other respects. Plaintiffs are to recover their costs on appeal from defendant Giomi. In the action on Giomi's cross-complaint against Bay Counties Title Guaranty Company, each party shall bear its own costs on appeal.

Shoemaker, P. J., and Agee, J., concurred.

The petitions for a rehearing were denied December 18, 1964, and appellants' petitions for a hearing by the Supreme Court were denied January 13, 1965.