[S. F. No. 15779. In Bank.—July 19, 1937.]

PATRICIA E. DIXON, as Executrix, etc., Appellant, v. DORIS E. RUSSELL, Respondent.

Elmer P. Delany and Felix Lauricella for Appellant.

Barrett & Barrett for Respondent.

NOURSE, J., *pro tem.*—Joseph J. Russell and Doris E. Russell married in 1931. In May, 1932, they acquired, as community, the property in suit, a lot in Marin County. In April, 1934, the wife recorded a homestead on the property for the joint benefit of herself and husband. In August, 1934, the wife executed a quitclaim deed to this property with her husband as grantee and, at the same time, the husband executed three quitclaim deeds to the wife covering other community property, and also executed a deed of trust on the property in suit to secure an indebtedness payable to the wife. All these instruments were recorded, and each of the quitclaim deeds contained a clause reading: "Hereby releasing and waiving all rights under and by virtue of the Homestead Exemption laws of the State of California." These papers were executed as a part of a property settlement in a pending divorce proceeding, but the record does not disclose anything further than that the proceeding was commenced and that these documents were recorded. The wife thereafter asserted a homestead right in the property in suit, and this action was brought by the husband on July 5, 1935, to quiet title to this parcel. Before answer was filed the husband died, and his executrix was substituted as plaintiff herein. The defendant,

in her answer, asserted that the property was subject to the trust deed and the homestead and that, since the homestead had been selected from community property, the entire estate went to her upon the death of the husband. The defendant had judgment, and the plaintiff appeals, presenting the single question whether the conveyances of August, 1934, operated as an abandonment of the homestead.

The appellant takes the position that, since the instruments were executed at the same time and as part of one entire transaction, they should be held to constitute an abandonment of the homestead. The respondent relies upon the strict terms of the statute requiring a declaration of abandonment to be signed by the husband and wife and argues that an abandonment is effectual only when both husband and wife execute the same instrument.

The pertinent statutory provisions are found in sections 1242, 1243, and 1244 of the Civil Code, which read: "1242. *How conveyed or encumbered.* The homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife. 1243. *How abandoned.* A homestead can be abandoned only by a declaration of abandonment, or a grant thereof, executed and acknowledged: (1) By the husband and wife, if the claimant is married; (2) By the claimant, if unmarried. 1244. *Same.* A declaration of abandonment is effectual only from the time it is filed in the office in which the homestead was recorded."

Early statutes containing provisions similar to those of section 1242 have been frequently interpreted to mean "that the homestead cannot be alienated or encumbered by separate instruments separately executed by the husband and wife, and that it can only be so alienated or encumbered by the joint and concurrent execution of the instrument by the two". (*Hart* v. *Church,* 126 Cal. 471, 477 [58 Pac. 910, 912, 59 Pac. 296, 77 Am. St. Rep. 195].) To the same effect are *Poole* v. *Gerrard,* 6 Cal. 71, 73 [65 Am. Dec. 481]; *Barber* v. *Babel,* 36 Cal. 11, 18; *Gagliardo* v. *Dumont,* 54 Cal. 496, 499; *Flege* v. *Garvey,* 47 Cal. 371, 376; *Burkett* v. *Burkett,* 78 Cal. 310, 314 [20 Pac. 715, 12 Am. St. Rep. 58, 3 L. R. A. 781]; *Wall* v. *Brown,* 162 Cal. 307, 310 [122 Pac. 478].

The Poole case was based upon the Homestead Act of April 21, 1851 (Comp. Laws, 1850–53, p. 850), which provided that "no mortgage, sale or alienation of any kind (of a home-

stead) . . . shall be valid without the signature of the wife to the same''. The husband conveyed the homestead property, and then left the state; the wife thereafter, under the impression that she had no legal rights to the property, conveyed her interest by separate deed. It was held that both the deeds separately executed were invalid and that ''To make a valid sale of the homestead requires the joint deed of husband and wife.''

The other three early cases involved an interpretation of the Homestead Act of 1860, as amended in 1862 (Stats. 1862, p. 519, sec. 2), which read in part ''No alienation, sale, conveyance, mortgage, or other lien, of or upon the homestead property, shall be valid . . . unless the same be executed by the owner thereof, and be executed and acknowledged by the wife, if the owner be married. . . . Said homestead shall be deemed to be abandoned when a declaration thereof, in writing, executed and acknowledged by the owner thereof, and executed and acknowleded by the wife, if the owner be married, . . . is filed for record. . . . '' In the Barber case the court, in construing the act of 1860 and the earlier decisions which had led to its enactment, said that the intention of the act was to create a joint estate in the homestead property, to the extent of the homestead value, which ''cannot thereafter, while both live, be severed, alienated, encumbered, divested, destroyed, or impaired without the concurrent act of both parties''. In the Flege case the husband became insane after a homestead had been created, and his guardian sold the property for the maintenance of the husband and his family. To this the wife consented and received a portion of the proceeds of the sale. But this court held that the entire transaction was invalid because the act of 1862 required that ''the alienation, conveyance, declaration of abandonment, etc., shall be executed by the husband and also by the wife''. In the Gagliardo case the husband gave to another his power of attorney to sell all his property, including that upon which a homestead had been declared. The attorney-in-fact sold and conveyed the homestead premises and the wife of the owner joined in the deed. After the wife died, the husband asserted his interest in the premises and his claim was upheld. This court there applied the strict terms of the act of 1862 and held that ''neither the husband nor the wife had power to transfer the homestead by a separate conveyance''; that it is the policy of the law to preserve the homestead as a place of

residence for the family; and that "in pursuance of that policy its destruction is prohibited, except by the joint act of both in the mode provided by the homestead law". In the Hart case, which was decided after the enactment of the code sections, this court, after reviewing many of the earlier cases, said: "We have been at pains thus to quote from the decisions of this court to show that uniformly and without any conflict the statute and the code, though not using the term 'jointly' or 'concurrently', have been construed to mean that the homestead cannot be alienated or encumbered by separate instruments separately executed by the husband and wife, and that it can only be so alienated or encumbered by the joint and concurrent execution of the instrument by the two." This language was explained in *Cunnyngham* v. *Mason-McDuffie Co., Inc.,* 218 Cal. 196, 200 [22 Pac. (2d) 515], as not requiring that the instrument be signed at the same time and place by the husband and wife or acknowledged before the same notary public, but, otherwise, the rule of these cases has not been relaxed.

The appellant concedes the binding force of these decisions in so far as they relate to the power to alienate or encumber the homestead, but contends that a different rule should apply to an abandonment. The argument is that the joint act of husband and wife is required by section 1242 of the Civil Code because of the expression "unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife". Then it is argued that since the word "instrument" is not used in section 1243, a different interpretation should be given that section. But the words "declaration of abandonment" and "grant" are used in this section in the same way and to the same purpose as the word "instrument" is used in section 1242. A declaration of abandonment is itself an instrument as it must be in writing, hence the section would have the same meaning if it read that the "instrument" of abandonment must be "executed and acknowledged: (1) By the husband and wife". The only difference between these portions of the two sections would then be in the omission of the word "both" before "husband and wife" in the latter section, and this would not affect the meaning. We conclude, therefore, that because of the long-established practice, these sections must be interpreted to mean that a homestead of this character cannot be

alienated, encumbered, nor abandoned by separate instruments separately executed by the husband and wife.

The appellant suggests that by her deed the wife voluntarily surrendered her interest in the homestead and that she should now be held to have waived all claim to the premises. *Flege* v. *Garvey, supra,* and *Gagliardo* v. *Dumont, supra,* are directly to the point, that there can be no surrender except in the mode prescribed by the statute. If there can be no surrender of the interest by such a deed there could be no waiver of the right to assert the interest except by the manner prescribed in the statute.

Our conclusions on the effect of the deeds render it unnecessary to consider the status of the deed of trust covering the premises.

The judgment is affirmed.

Edmonds, J., Shenk, J., Langdon, J., Curtis, J., and Seawell, J., concurred.