[Civ. No. 38028. First Dist., Div. One. May 31, 1977.]

ANN KATSIVALIS, Plaintiff, Cross-defendant and Appellant, v.
SERRANO RECONVEYANCE COMPANY et al.,
Defendants and Respondents;
HOME SAVINGS AND LOAN ASSOCIATION,
Defendant, Cross-complainant and Respondent.

204

**COUNSEL**

Claude Cooper for Plaintiff, Cross-defendant and Appellant.

No appearance for Defendants and Respondents.

McLeod & Wilson and George M. McLeod for Defendant, Cross-complainant and Respondent.

## OPINION

**SIMS, Acting P. J.**—Plaintiff, a widow, has appealed from a judgment that imposed an equitable lien on property which she holds as surviving joint tenant and under a homestead executed by herself and her husband. The judgment also denied her prayer for cancellation of a promissory note, executed, together with a deed of trust, only by her deceased husband for himself individually, and for her as her attorney in fact, in order to refinance obligations which were secured by liens against the property which antedated the homestead. She contends that the court erred in finding that the power of attorney was valid despite her claim of incompetency, and in admitting evidence and in failing to make findings in her favor on that issue. She also asserts that the court improperly awarded the defendant savings and loan association an equitable lien on the theory of unjust enrichment because it violates the policy of the homestead laws, because the lender had an adequate remedy at law, because it was guilty of unclean hands, and because it will result in excessive loan payments from her.

On examination of her contentions it is concluded that there was substantial evidence to support the findings and conclusions that the widow was competent and authorized and ratified her husband's actions, that the deed of trust was invalid for failure to comply with the technical provisions of the homestead law, and that the lender was entitled to an equitable lien. We do conclude that the court erred in granting an equitable lien measured by the terms of the new obligation executed solely by the husband, and remand the case for a determination of the scope of the obligations which were ostensibly discharged by the refinancing in question.

The material facts are set forth in connection with the discussion of the issues.

The undisputed facts in this case reflect that on September 15, 1972, when the decedent attempted to refinance the loans on the property held in joint tenancy with his wife on which a homestead had been declared, the homestead was subject to a first deed of trust to American Savings and Loan Association on which there was owing principal in the sum of $15,368.46 plus some accrued interest and a late charge, and subject to a second deed of trust to Mathilda Kantor on which there was owing $9,808.30 plus some accrued interest. As a result of the transaction the

property was subjected to a new first deed of trust to secure a $26,800 loan.

■ The trial court properly found[1] on sufficient evidence[2] that the husband signed the new note and deed of trust as attorney in fact for his wife; that the power of attorney had been signed by the wife on June 14, 1962, was duly recorded and authorized him to sign notes and deeds of trust for her as her attorney in fact; that the wife was competent and of sound mind and understanding at the time she signed and delivered the power of attorney to her husband; and that the power of attorney was never revoked and was in full force and effect from the time it was made until the death of the husband.

Plaintiff marshalls the evidence which she offered to show that she was without understanding to make a contract at the time the power of attorney was allegedly executed and delivered, and to show irregularities in the instrument itself and the proof of its execution. It is sufficient to note that there was ample evidence, if believed, to support the findings of the trial court. Under those circumstances they must be accepted on appeal. ■ In *Foreman & Clark Corp.* v. *Fallon.* (1971) 3 Cal.3d 875 [92 Cal.Rptr. 162, 479 P.2d 362], the court collated the applicable principles as follows: " 'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' (*Primm* v. *Primm* (1956) 46 Cal.2d 690, 693 [299 P.2d 231]; [citation].) [¶] 'It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact.' (*Tesseyman* v. *Fisher* (1952) 113 Cal.App.2d 404, 407 [248 P.2d 471]; [citations].) Defendants' contention herein 'requires defendants to demonstrate that there is *no* substantial evidence to support the challenged findings.' (Italics added.) (*Nichols* v. *Mitchell* (1948) 32 Cal.2d 598, 600 [197 P.2d 550]; [citations].)" (3 Cal.3d at p. 881; see also *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

---

[1]Plaintiff submits her objections to the defendant's proposed findings of fact and conclusions of law and her proposed counterfindings of fact and conclusions of law and her objections to the proposed judgment to this court for review without specification of error. We therefore will only consider such points as are otherwise raised in her brief.

[2]Plaintiff claims error in the admission of evidence that the husband used a disputed power of attorney in other transactions. She fails to show that the evidence was not relevant and competent.

■ In the light of the above findings, and other findings which reflect that the wife ratified and approved the transaction, and conferred upon her husband ostensible and apparent, as well as actual, authority to sign the note and deed of trust, the court properly found that the note was a valid and enforceable promissory note as to the wife. ■ For the same reasons we must reject the widow's contentions that she took the property free of all liens as surviving joint tenant. ■ It is true that a surviving joint tenant will take free of a mortgage or deed of trust executed solely by the deceased joint tenant. (*People* v. *Nogarr* (1958) 164 Cal.App.2d 591, 594 [330 P.2d 858, 68 A.L.R.2d 992]; and *Hamel* v. *Gootkin* (1962) 202 ·Cal.App.2d 27, 29 [20 Cal.Rptr. 372], approved, *Tenhet* v. *Boswell* (1976) 18 Cal.3d 150, 159 [133 Cal.Rptr. 10, 554 P.2d 331].) ■ Here, however, the court found in effect that both joint tenants joined in the execution of the note and deed of trust, and solely as surviving joint tenant the widow could not defeat the acts which the court found the husband was authorized to take on her behalf.

■ The principal issue in this case revolves about the widow's rights under a declaration of homestead which the court found was recorded March 22, 1965, and was valid and had not been abandoned on September 15, 1972, when· the existing loans, to which the homestead was subject, were refinanced. The court properly found that the deed of trust given to secure the new loan was subject to the homestead because under the provisions of section 1242 of the Civil Code[3] it was necessary that the homestead claimants both personally execute and acknowledge the encumbrance, and the signature of the wife's attorney in fact would

[3]Section 1242 provides in pertinent part: "Except . . . where one or more spouses is incompetent, and except in the case of a married person's separate homestead, the homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife or unless each spouse executes and acknowledges a separate instrument so conveying or encumbering the homestead in favor of the same party or his successor in interest; . . ."

See also section 1241 which provides in part: "The homestead is subject to execution or forced sale in satisfaction of judgments obtained; . . . 3. On debts secured by encumbrances on the premises executed and acknowledged by husband and wife, by a claimant of a married person's separate homestead, or by an unmarried claimant. 4. On debts secured by encumbrances on the premises, executed and recorded before the declaration of homestead was filed for record."

The encumbrances paid off, unlike the deed of trust given to the defendant savings and loan association which was not executed as required by subdivision 3 of section 1241 and section 1242, were ostensibly executed and acknowledged by both husband and wife, and in any event fall within the provisions of subdivision 4 having been recorded on July 26, 1961, with respect to Kantor (who apparently thereafter subordinated her loan) and on December 29, 1961, with respect to the predecessor of American Savings and Loan Association.

not suffice. ■ The homestead may only be destroyed or alienated in the mode provided by the homestead law. (*Gagliardo* v. *Dumont* (1880) 54 Cal. 496, 499-501; see also *Dixon* v. *Russell* (1937) 9 Cal.2d 262, 264-266 [70 P.2d 196]; *Freiermuth* v. *Steigleman* (1900) 130 Cal. 392, 393 [62 P. 615]; *Hart* v. *Church* (1899) 126 Cal. 471, 476-477 [58 P. 910, 59 P. 296]; *Security Loan etc. Co.* v. *Kauffman* (1895) 108 Cal. 214, 220-221 [41 P. 467]; *Powell* v. *Patison* (1893) 100 Cal. 236, 238 [34 P. 677]; *Merced Bank* v. *Rosenthal* (1893) 99 Cal. 39, 48-49 [33 P. 732]; *Gleason* v. *Spray* (1889) 81 Cal. 217, 220 [22 P. 551]; and *Barber* v. *Babel* (1868) 36 Cal. 11, 15-23. Note: *Meier* v. *Hayes* (1937) 20 Cal.App.2d 451, 453-454 [67 P.2d 120] [unauthorized mortgage of executrix] and *Howard* v. *Bryan* (1901) 133 Cal. 257, 268 [65 P. 462] [void mortgage of guardian].)

■ Section 1265 provided and provides, in pertinent part: "From and after the time the declaration is filed for record, the premises therein described constitute a homestead. If the selection was made by a married person from the community property . . . the land so selected, on the death of either of the spouses, vests in the survivor . . . subject to no other liability than such as exists or has been created under the provisions of this title; . . ." (See also Prob. Code, § 663; and *Estate of Headen* (1877) 52 Cal. 294, 297-298.) The foregoing provisions cannot give the widow greater rights than either she or her husband, or both would have against debts secured by encumbrances on the premises executed and recorded before the declaration of homestead was filed for record. (§ 1241, subd. 4.)

■ Nevertheless the trial court found that the widow would be unjustly enriched if the relief she prayed for—cancellation of the note and deed of trust—were unqualifiedly granted. It therefore gave the defendant savings and loan association an equitable lien on the same terms as the loan which had been set forth in the deed of trust given to secure the note on which the widow was found to be still personally liable. (See *Security Loan etc. Co.* v. *Kauffman, supra,* 108 Cal. 214, 223.) It cannot be gainsaid that the unqualified cancellation of the invalid mortgage would enrich the widow. From a homestead right which was subjected to encumbrances of over $25,000 in September 1972 she claims to have been relieved of that burden by what the court found was a good faith effort on the part of her husband, with her assent, to lower the monthly payments on the property and obviate the necessity of making a balloon payment to the second mortgagee on or before July 26, 1974. In giving relief to the lender the court in effect ratified the invalid

obligation. That course may have been of doubtful validity. Any unjust enrichment should be measured by the benefits to the widow, not the amount expended by the creditor on her behalf. As noted below, however, the burden of the new obligation may be less than that of the old.

The lender is entitled to relief in this case on general principles stated in *Simon Newman Co.* v. *Fink* (1928) 206 Cal. 143 [273 P. 565], quoting from 27 American & English Encyclopedia of Law (2d ed.) at page 247, as follows: " 'One who advances money to pay off an encumbrance on realty at the instance of either the owner of the property or the holder of the incumbrance, either on the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer; and in the event the new security is for any reason not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby, and to this end equity will set aside a cancellation of such security, and revive the same for his benefit.' (See, also, *Swift* v. *Kraemer,* 13 Cal. 526 [73 Am.Dec. 603]; Civ. Code, sec. 2903.)" (206 Cal. at p. 146; see also *Copp* v. *Millen* (1938) 11 Cal.2d 122, 125-126 [77 P.2d 1093]; *Parker* v. *Tout* (1929) 207 Cal. 590, 592-594 [279 P. 431]; *White* v. *Stevenson* (1904) 144 Cal. 104, 110 [77 P. 828]; *San Francisco etc. Assn.* v. *Bowden* (1902) 137 Cal. 236, 238 [69 P. 1059]; *Darrough* v. *Herbert Kraft Co. Bank* (1899) 125 Cal. 272, 274-275 [57 P. 983]; *Van Sandt* v. *Alvis* (1895) 109 Cal. 165, 170 [41 P. 1014]; *Shaffer* v. *McCloskey* (1894) 101 Cal. 576, 580-581 [36 P. 196]; and *Tolman* v. *Smith* (1890) 85 Cal. 280, 289-290 [24 P. 743].)

The fountainhead for the application of the doctrine in California is the case referred to in the foregoing quotation, *Swift* v. *Kraemer.* There, in 1858, the court permitted the creditor who advanced funds to pay off prior obligations which were a lien against the homestead to enforce those obligations against the homestead when it appeared that the new obligation could not be so enforced. The court stated, "A Court of Equity, looking to the substance of such a transaction, would not permit a release, intended to be effectual only by force of, and for the purpose of, giving effect to the last mortgage, to be set up, even if the last mortgage was inoperative. It would not permit Revalk to take Kraemer and Eisenhardt's money and apply it in extinguishment of a prior incumbrance, and then claim that the property should neither be bound

by the new mortgage or the old. These last mortgagees would be, in equity, assignees of the debts they paid, and be subrogated to the rights of their assignors; for, in equity, the substance of the transaction would be an assignment of the old mortgages in consideration of the money advanced." (13 Cal. at p. 530; see also, *San Francisco etc. Assn.* v. *Bowden, supra,* 137 Cal. 236, 238; *Van Sandt* v. *Alvis, supra,* 109 Cal. 165, 168-170; and *Barber* v. *Babel, supra,* 36 Cal. 11, 23-29, each involving a homestead.) In the case last cited the court applied the rule that no new rights could be created in the homesteaded property by the act of the husband alone in any form. It recognized, however, that an action could have been brought on the valid superseded prior obligation had it not been barred by the statute of limitations. (36 Cal. at pp. 23-24; see also *Van Sandt* v. *Alvis, supra,* 109 Cal. at p. 170.)

It is contended that *San Francisco etc. Assn.* v. *Bowden, supra,* is not pertinent because it involved fraud. ▮ It is clear that equitable jurisdiction runs to mistake as well as fraud. ▮ "Mistake is the foundation of one of the chief branches of equity jurisprudence, and the exercise of equity jurisdiction is frequently had where a contract as written does not express the terms of the actual agreement between the parties. This jurisdiction is often invoked to set aside or cancel the release of a mortgage that has been given under a mistake of fact, or contrary to the evident intention of the parties; notably when, upon the execution of a new mortgage, in renewal or as a substitute for a prior one, the former mortgage is released in ignorance of the existence of an intervening lien. Equity looks at the intention of the parties, and will control the effect of a release executed under a mistake of fact, or cause it to be canceled, when no intervening rights have accrued by reason of the mistake. [Citations.]" (*White* v. *Stevenson, supra,* 144 Cal. 104, 109.)

In support of the judgment as rendered the lender relies on general equitable principles set forth in *Wagner* v. *Sariotti* (1943) 56 Cal.App.2d 693 [133 P.2d 430], as follows: "The equity courts look with favor upon equitable liens, and frequently such liens are employed to do justice and equity and to prevent unfair results. [Citations.]" (56 Cal.App.2d at p. 698; see also *Kinsell* v. *Thomas* (1912) 18 Cal.App. 683, 693 [124 P. 220].) In the *Kinsell* case the court affirmed a judgment which quieted title in favor of the son of the owners of homesteaded property, who went into possession under a parole gift from his parents, as against a grantee from his father after the mother's death. In that case however, although there was no conveyance executed and acknowledged by each spouse, the equities to be adjudicated were not between the grantee of a void

conveyance and one claiming under the homestead, but between the former and a stranger. It is not persuasive here as extending the rights of the lender. There is also some precedent for creating an estoppel against one claiming under a homestead. (See *Raggio* v. *Palmtag* (1909) 155 Cal. 797, 803 [103 P. 312]; and *Ions* v. *Harbison* (1896) 112 Cal. 260, 268-270 [44 P. 572].) Nevertheless with respect to a homestead right it has been said, "Estoppel, however, is not favored by the courts. [Citations.]" (*Selinger* v. *Milly* (1942) 51 Cal.App.2d 286, 290 [124 P.2d 631].)

The widow's attack on the equitable solution is fourfold. She claims that the lender should be denied equitable relief because to do so violates the policy of the homestead law, because it has an adequate remedy at law, because it is guilty of unclean hands, and because it will result in $30,255 damages to her.

The principle of the homestead is aptly stated in *Beaton* v. *Reid* (1896) 111 Cal. 484 [44 P. 167], as follows: "The subject of homesteads is one wholly committed by the constitution to the legislature, with simply the general mandate that the latter shall protect it by law *from forced sale.* (Const., art. XVII.) The extent of the right, therefore, and the mode of its protection, with the limitation of the rights of creditors therein, are purely matters of legislative prescription, and something with which we have nothing to do but to construe and apply. As aptly suggested in *Fitzell* v. *Leaky,* 72 Cal. 477, 483 [14 P. 198], 'With the policy of the law, or the abstract morality of a particular transaction, we have nothing to do. The doctrine bearing upon conveyances made to hinder, delay, or defraud creditors has no application to the creation of a homestead. If any doubt remained as to the intention of the legislature, it ought to be set at rest by the language of sections 1240 and 1241 of the Civil Code, which, after declaring generally that the homestead is exempt, enumerates as an exception that it is subject to sale in satisfaction of judgments obtained before the declaration of homestead was filed, *"and which constitute liens upon the premises."* ' " (111 Cal. at p. 487; see also *Barber* v. *Babel, supra,* 36 Cal. 11, 22.)

Mere use of a homestead to hinder and delay creditors, or the fact that the debtor is otherwise insolvent will not give rise to any equitable or legal rights in the creditor. (*Schmidt* v. *Denning* (1931) 117 Cal.App. 36, 39 [3 P.2d 322].) Nor will an equitable lien be created because the debtor inequitably permitted a levying judgment creditor ignorant of the homestead, 'to buy in the property. (*Viotti* v. *Giomi* (1964) 230 Cal.App.2d 730, 737-738 [41 Cal.Rptr. 345]; see also *Coakley* v. *Swim*

(1933) 218 Cal. 340, 343 [23 P.2d 518].) "Rules of equity cannot be intruded in matters that are plain and fully covered by positive statute [citation]. Neither a· fiction nor a maxim may nullify à statute [citation]. Nor will a court of equity ever lend its aid to accomplish by indirection what the law or its clearly defined policy forbids to be done directly [citation]." (*Lass* v. *Eliassen* (1928) 94 Cal.App. 175, 179 [270 P. 745].) In this case, however, the reinstatement of the prior encumbrance does not involve a curb on the. homestead, but merely prevents unjust enrichment and restores it to its original worth. No new rights are created in the creditor, and the policy of the homestead law is not subverted.

 In the refinancing of the loan the sum of $167.80 was charged to the borrower for "cost of recording deed and other documents, reconveyance charge and *title insurance fee.*" (Italics added.) The widow asserts that the court committed error in awarding an equitable lien since the lender had an adequate remedy at law. (See *Morrison* v. *Land* (1915) 169 Cal.' 580, 586 [147 P. 259].) As we have seen, equity generally will act to give a lender the security for which he bargained in the situation when there is mistake or fraud with respect to an intervening right which cuts off a preexisting. encumbrance which has been satisfied by the loan proceeds. The fact the creditor has an unsecured right to recover against the debtor is not an adequate legal remedy. The widow, however, claims that the lender's right to indemnification from the title company gives it adequate relief in this case. That argument must fail on two grounds. In the first place the existence of a legal remedy against one of several obligors cannot relieve another obligor of his equitable responsibility. (See *Barr* v. *Roderick* (N.D. Cal. 1925) 11 F.2d 984, 986.) In the second place the title company, if called upon to indemnify the lender is entitled to be subrogated to all of its rights against the borrower. The advantage of spreading losses arising from particular contingencies over many premium payers through the insurance device is well recognized in modern jurisprudence. We know of no policy, however,. that necessitates burdening those premium payers with the costs of enriching a widow, destitute though she may be, who seeks to increase her equity in a homestead because of the mutual mistake of her husband and the lender and the latter's title insurer. In this case, as in *Viotti* v. *Giomi, supra,* there was an error by a title company in overlooking a valid homestead (see 230 Cal.App.2d at p. 734). Nevertheless in that case, unlike this case, the creditor had not advanced funds to discharge valid encumbrances against the homestead. He was a levying creditor without a right to subrogation.

Secondly the widow asserts that the court committed error in awarding an equitable lien because the defendants were guilty of unclean hands. "The rule is settled in California that whenever a party who, as actor, seeks to set judicial machinery in motion and obtain some remedy, has violated conscience, good faith or other equitable principle in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to interfere on his behalf to acknowledge his right, or to afford him any remedy. [Citations.]" (*Lynn* v. *Duckel* (1956) 46 Cal.2d 845, 850 [299 P.2d 236].) A complementary rule is that he who seeks equity must do equity. (See *Stein* v. *Simpson* (1951) 37 Cal.2d 79, 82 [230 P.2d 816].) In the latter case the court recognized a principle analogous to that on which the lender relies in this case, as follows: "It is the general rule that where the holder of a junior lien on property pays the debt secured by a senior lien to protect his interest, he thereby becomes subrogated to the rights of the senior lienholder as against the owner of the property, even though he takes no assignment of the senior lien. [Citations.]" (37 Cal.2d at p. 84.) Nevertheless it declined to protect the party seeking relief because it found his conduct "was fraudulent, either actually or constructively, or at least tantamount to fraud, that is, an endeavor to unlawfully obtain plaintiffs' property for less than its value." (*Id.,* at p. 86.) No such claim is made here, nor was the lender a volunteer in advancing funds to pay off the earlier encumbrances. (Cf. *Shelley* v. *Board of Trade* (1927) 87 Cal.App. 344, 349-350 [262 P. 403].) The moneys were paid out in good faith to carry out the borrowers' intention to reduce the payments on their home. The only claim made by the widow is that the notary erroneously completed a notarial form certifying that both parties personally executed the deed of trust. That such was an error, and not an attempt to represent that the widow had personally signed, is patent from the face of the instrument itself. It is signed by the husband individually and then again with the name of his wife followed by his signature as attorney in fact. There was no fraud or unconscionable conduct in the erroneous recital in the acknowledgement. The fact that the earlier loan may have been accompanied by mortgage insurance on the life of the husband gives the wife no greater rights. The court found, on sufficient evidence, that both spouses wanted to reduce the loan payments. They were free to arrange for such insurance on the new loan if they desired, and presumably they could have cancelled it on the old loan had they not refinanced it.

Finally the widow claims that the court erred in granting specific performance of an equitable lien commensurate with the terms of the new loan because it increased the total amounts payable from $35,625 on

the superseded loans to $65,880, or an aggregate sum of $30,255. The court erred in predicating the equitable lien on the terms of the new note. The lender is entitled to be subrogated to the rights of the former lien holder. It will be necessary to compute the various payments which would have been made under the old loans including the principal of the Kantor loan, together with legal interest thereon from the time each payment would have fallen due. The lender should be credited with those sums. The widow should be credited with the sums actually paid in on the new loan with legal interest thereon from the time each payment was made. After adjustment for taxes and other charges, and for any impounds or payments affecting the same, a balance may be struck representing the true amount due. The widow should have the election of continuing the equivalent of what would then have been the amount then presently due and a lien under the prior American Savings and Loan Association loan according to the terms of that loan. The balance of what is owing would be immediately due and payable and be a lien on the property. Any excess representing the balance due under the new loan in excess of the foregoing would be unsecured. It may be that the continuance of the new loan would be more advantageous for all concerned. The foregoing computation alone can tell.

The judgment is reversed. The case is remanded with instructions to the trial court to determine, in accordance with the views expressed above, the amount for which the lender can properly claim a lien by subrogation to the rights of the liens which it discharged.

Elkington, J., and Weinberger, J.,* concurred.

A petition for a rehearing was denied June 27, 1977, and appellant's petition for a hearing by the Supreme Court was denied August 4, 1977.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.