Filed 10/23/14  Reddick v. Mortgage Electronic Registration Systems CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| ROXANNE REDDICK, | F067607 |
| Plaintiff and Appellant, | (Super. Ct. No. 618323) |
| v. | |
| MORTGAGE ELECTORNIC REGISTRATION SYSTEMS, INC., et al., | **OPINION** |
| Defendants and Appellants. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Roger M. Beauchesne, Judge.

Law Offices of Steven J. Hassing and Steven J. Hassing for Plaintiff and Appellant.

Law Offices of Glenn H. Wechsler, Glenn H. Wechsler and Jeffrey D. Kirk for Defendants and Appellants.

-ooOoo-

---

[*] Before Cornell, Acting P.J., Gomes, J. and Kane, J.

Plaintiff Roxanne Reddick (Reddick) brought this action to (1) cancel a forged deed that purported to convey her undivided one-half interest in real property to her joint tenant, Dominic Truhett (Truhett), and (2) partially cancel a subsequent deed of trust issued in favor of Alliance Bancorp as the lender on a $164,000 promissory note that Truhett executed in his name alone and Mortgage Electronic Registration Systems, Inc. (MERS), as the beneficiary. MERS filed a cross-complaint seeking, among other things, to establish an equitable lien on the property under the theory of equitable subrogation.

Following a court trial, the trial court found that the deed was forged, and therefore was void and of no effect, and canceled the deed of trust as to Reddick's interest in the property. The trial court awarded MERS an equitable lien in the first priority position on the entire property, which included prejudgment interest and the property taxes and insurance the lender paid to preserve the property.

Reddick appeals, contending the trial court erred in its determination of the amount of property taxes, insurance, and prejudgment interest awarded. MERS cross-appeals, contending the trial court erred when it denied its pre-trial motion to dismiss Reddick's complaint based on the failure to bring the case to trial within five years of the filing of the complaint. We find no merit in either the appeal or cross-appeal, and accordingly affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2001, Reddick and Truhett, an unmarried couple, decided to purchase real property on Hallman Lane in Oakdale and that Truhett would take title to the property in his name only. Reddick provided some funds toward the down payment and $10,000 to remodel and upgrade the property. Once the loan transaction was concluded and the deed of trust recorded, Truhett executed an individual grant deed conveying the property to Reddick and Truhett as joint tenants.

In March 2002, Reddick and Truhett ended their relationship. Reddick lived in the residence and paid the mortgage for three to four months. When she could no longer

2.

afford the payments, she vacated the property and Truhett took sole possession in July 2002.

On May 21, 2004, a grant deed was recorded purporting to transfer the property from Truhett and Reddick, as joint tenants, to Truhett alone. According to Reddick, the signature on the grant deed purporting to be hers was a forgery; it was neither authorized by her nor genuine. Soon after recording the deed, Truhett refinanced the property with a $94,000 loan through New Century Mortgage Corporation; $74,517.78 of the loan was used to pay off the 2001 loan, thereby discharging the 2001 deed of trust. Truhett refinanced a second time in December 2004, with a new loan of $102,399.45, which paid off the May 2004 loan.

Truhett refinanced a third time in November 2006. On November 25, 2006, Truhett executed a $164,000 promissory note secured by a deed of trust in favor of Alliance Bancorp as lender and MERS as the beneficiary (the 2006 loan). As a result, all liens issued before December 1, 2006 being removed, the MERS deed of trust became first in priority.

In November 2011, Reddick again occupied the property, but did not pay the mortgage, property taxes or insurance. The last mortgage payment was made in September 2010. Bank of America, a successor by merger to BAC Home Loans Servicing, LP, paid insurance and taxes on the property totaling $4,779.65.

Reddick filed the initial complaint in this lawsuit on August 23, 2007, which she subsequently amended several times. On January 20, 2009, Truhett's attorney filed a notice of stay of proceedings in which she declared that this case was stayed due to an automatic stay caused by Truhett's filing of a bankruptcy petition in the United States Bankruptcy Court, Eastern District of California, on January 14, 2009. In a March 16, 2009 case management conference order, the trial court listed, under "Other Orders": "Proceedings stayed as to [Defendant] Truhett." Truhett was discharged from bankruptcy on May 4, 2009.

3.

At trial, the operative complaint was the fourth amended complaint, filed on September 14, 2011, which named as defendants MERS, Alliance Bancorp, BAC Home Loans Servicing, LP and Truhett. Reddick alleged two causes of action. The first, against Truhett only, was for cancellation of the portion of the May 21, 2004 grant deed which purported to convey her undivided one-half interest in the property to Truhett, as her signature was forged. The second, against all defendants, was to cancel that portion of the December 1, 2006 deed of trust naming MERS as the beneficiary and in which her undivided one-half interest was encumbered, and reform the deed of trust to reflect that only Truhett's undivided one-half interest in the property is encumbered thereby.

On March 19, 2012, MERS filed a cross-complaint against Reddick and Truhett for declaratory relief, equitable lien and equitable subrogation, by which it sought to establish, among other things, an equitable lien on the property under the theory of equitable subrogation. Truhett had default entered against him on the third amended complaint on September 7, 2011 and on the cross-complaint on July 26, 2012.

On August 28, 2012, MERS filed a motion to dismiss the complaint pursuant to Code of Civil Procedure sections 583.310 and 583.360, on the basis that Reddick failed to bring the case to trial within five years.[1] Reddick opposed the motion, arguing it must be denied because the five years within which the action had to be brought to trial was tolled during the 117 days the action was stayed due to Truhett's bankruptcy case. The trial court denied the motion.

The matter proceeded to a court trial on November 27, 2012. The parties stipulated to most of the facts and, following presentation of evidence, they submitted opening and reply post-trial briefs, after which the court took the matter under submission. At Reddick's request, the court issued a proposed statement of decision on

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

4.

February 27, 2013. Reddick submitted objections to the proposed statement, to which MERS filed a response and a request for clarification.

On April 8, 2013, the trial court issued its final statement of decision. The court found that Reddick's name was forged on the May 2004 grant deed, and that MERS was entitled to an equitable lien based on the theory of equitable subrogation. As to the fourth amended complaint, the trial court declared to be void and of no effect both the portion of the May 2004 deed purporting to convey Reddick's undivided one-half interest in the property and the portion of the 2006 deed of trust purporting to encumber Reddick's undivided one-half interest.

As to the cross-complaint, the court declared there was an equitable lien in the first priority position on the entire property secured against the interests of both Reddick and Truhett, and that Truhett's undivided one-half interest in the property remained encumbered by the MERS deed of trust according to its terms. The trial court found the total dollar amount of the equitable lien to be $120,407.06, comprised of: (1) the amount of the prior liens on the property that were discharged, $71,153.68 ; (2) $44,473.73 in interest at the legal rate of seven percent per annum from May 21, 2004 to November 27, 2012; and (3) $4,779.65 which Bank of America paid for property taxes and insurance during Reddick's occupancy of the residence. Judgment subsequently was entered in conformity with the statement of decision. Reddick filed at timely appeal from the judgment, while MERS filed a timely cross-appeal from the order denying its motion to dismiss.

## DISCUSSION

*Reddick's Appeal*

In her appeal, Reddick challenges the trial court's determination of the amount of prejudgment interest awarded on the equitable lien and the amount of taxes and insurance included in the lien. The holder of an equitable lien may be entitled to interest on its lien at the legal rate. (*Katsivalis v. Serrano Reconveyance Co.* (1977) 70 Cal.App.3d 200,

5.

214-215 (*Katsivalis*); Civ. Code, § 3288 ["In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury."].) Where interest is awarded on a non-contractual claim, the rate is 7% per annum. (Cal. Const., art. XV, § 1; *Pro Value Properties, Inc. v. Quality Loan Service Corp.* (2009) 170 Cal.App.4th 579, 582.)

Reddick does not dispute that MERS is entitled to prejudgment interest or to an award of property taxes and insurance paid. Instead, she asserts the trial court abused its discretion in awarding $44,473.73 in interest on the following grounds: (1) interest should not have been awarded from May 21, 2004 because the 2006 loan was not taken out until December 2006; (2) the interest rate should be the rate charged under the 2006 loan, 4.75%, not the rate of 7%; (3) the trial court improperly awarded MERS double interest by awarding interest for the period during which Truhett made interest payments on the 2006 loan; and (4) the trial court improperly included interest for periods when Reddick did not have possession of the property. With respect to the taxes and insurance, Reddick argues she should only have to pay those amounts incurred while she was in actual possession of the property.

MERS contends Reddick's claims are not reviewable because she failed to present any evidence or argument at trial regarding the method of calculating interest. In its trial brief, MERS argued it was entitled to interest on its equitable lien from May 21, 2004 to November 27, 2012, at a rate of 7%, and that Reddick was not entitled to any credits as any loan payments Truhett made after 2004 would have been applied properly to the note and deed of trust encumbering his interest. In Reddick's trial brief, filed the same day as MERS's brief, she argued MERS was not entitled to an equitable lien and did not address the issue of interest.

The parties simultaneously filed opening post-trial briefs. In MERS's brief, it reiterated its argument concerning the calculation of interest, while in Reddick's brief, she argued her interest in the property should not be encumbered by more than the

6.

$71,153.68 principal balance that existed when the 2001 loan was paid off, she should not be charged the prepayment penalty, taxes or insurance which were charged to Truhett's loan, and finally that any equitable lien should not be burdened with interest, since the 2006 loan was accruing interest. The parties simultaneously filed reply briefs. Reddick did not address the issue of interest in her reply brief, while MERS addressed Reddick's arguments regarding the prepayment penalty, taxes, insurance and interest raised in her opening post-trial brief.

Thereafter, the trial court issue a proposed statement of decision. The trial court "determine[d] that interest at the legal rate and payment of insurance and property taxes while plaintiff had exclusive possession of the property is legally appropriate and justified." The trial court awarded interest on the payoff amount of the prior loan, $74,517.58, at the legal rate of 7% per annum from May 21, 2004 to November 27, 2012, as well as $4,779.65, for property taxes and insurance the lender paid during Reddick's occupancy of the residence.

Reddick filed objections to the proposed statement of decision. She argued the trial court miscalculated the amount of the equitable lien, contending it should only be the amount of principal paid off in May 2004, $71,153.68, and should not include interest, the prepayment penalty, and other fees that were included in the $74,517.58 payoff amount. Reddick asserted the trial court miscalculated the interest, as she should be charged interest only for the 12-month period in which she held exclusive possession of the property; even if the court correctly assessed interest from May 21, 2004, Reddick argued any interest from that date through September 2010, when the last mortgage payment was made, constitutes double interest since MERS already received interest payments from Truhett. Finally, Reddick argued the trial court miscalculated taxes and insurance and she should be assessed only $732.73, the difference between the $4,046.92 negative balance in the escrow account for taxes and insurance as of December 1, 2011,

7.

the date she took exclusive possession of the property, and the final negative balance of $4,779.65.

MERS filed a written response, urging the trial court to overrule Reddick's objections, arguing: (1) the lien should equal the entire amount the prior lender paid to retire the 2001 loan; (2) interest should run on the obligation while it is unpaid regardless of who was in possession of the property; (3) there is no double interest charged, as Reddick is not obligated under the MERS deed of trust and therefore not entitled to credit for interest payments Truhett made on his separate obligation, and Reddick produced no evidence on this subject at trial; and (4) Reddick is responsible for taxes and insurance paid regardless of whether she had possession of the property.

The trial court thereafter issued a final statement of decision, in which it addressed Reddick's objections and MERS's response. The trial court: (1) agreed with Reddick it would be inequitable to charge her with more than the principal balance of $71,153.68 that was paid off in May 2004; (2) agreed with MERS that because Reddick never legally lost part ownership of the property, she should be assessed interest regardless of whether she was in possession of the property; (3) concurred with MERS's position on the issue of the assessment of double interest and found none occurred; and (4) concurred with MERS that there was no miscalculation of taxes and insurance.

The first two issues Reddick raises on appeal – that the trial court abused its discretion in including interest from May 21, 2004 and in using the legal rate of 7% – were not raised below, either in pre- or post-trial briefing, or in Reddick's objections to the proposed statement of decision. As MERS asserts, we generally do not consider arguments raised for the first time on appeal; we have discretion, however, to consider a new theory if it involves an issue of law based on undisputed facts. (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767; *Matera v. McLeod* (2006) 145 Cal.App.4th 44, 59; *Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316-1317.) We note that Reddick cites absolutely no legal authority in support of these arguments. It is her

8.

burden to demonstrate error, including citing to legal authorities. It is fundamental that "the trial court's judgment is presumed to be correct, and the appellant has the burden to prove otherwise by presenting legal authority on each point made and factual analysis, supported by appropriate citations to the material facts in the record; otherwise, the argument may be deemed forfeited." (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655 (*Keyes*).) Since Reddick failed to raise these issues below, and fails to cite to legal authorities on appeal, we treat these arguments as forfeited.

The other three issues Reddick raises on appeal were included in her objections to the trial court's proposed statement of decision. MERS argues that it is too late and the issues should have been raised during trial. MERS, however, cites no authority in support of this assertion. Accordingly, we will exercise our discretion and review Reddick's remaining arguments.

First, Reddick asserts that, by including interest in the equitable lien for the period Truhett made interest payments on the 2006 loan, MERS was allowed double interest. She argues, without any citation to authority, that there was no reasonable basis for the trial court to award double interest, as the interest included in the equitable lien can only consist of that owed to MERS which was not paid, interest on the 2006 loan was paid through July 2010, and therefore Reddick could be charged interest on the lien only from August 2010 through November 27, 2012.

The 2006 loan and the equitable lien, however, are two separate obligations. As MERS asserts, the interest paid by Truhett on the obligation secured by the MERS deed of trust was applied to that obligation; using the same payment of interest to reduce the 2006 loan and the equitable lien to avoid unjust enrichment would give the payer double credit for the same payment. There is no abuse of discretion in finding that Reddick cannot claim credit for Truhett's payments on an obligation she successfully avoided. (See, e.g., *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1239-

9.

1240 [applying the principle that a person cannot adopt part of the contract which is beneficial to him or her and simultaneously reject its burdens].)

Reddick's final two arguments involve the same issue, namely whether interest, taxes and insurance can be charged against her during the period she did not have possession of the property. Reddick asserts that Truhett had sole possession of the property from July 2002 until November 2011, when she again occupied the property. Noting that the trial court stated in both the proposed and final statements of decision that "interest at the legal rate and payment of insurance and property taxes while [Reddick] had exclusive possession of the property is legally appropriate and justified[,]" she argues that she should only have been charged interest for the 12 months she exclusively possessed the property before trial, which she calculates as $7,887.66, and be required to pay only taxes and insurance paid during that same period, which she calculates as $1,394.

Despite the trial court's statement regarding "exclusive possession," when Reddick objected to the proposed statement of decision on this basis, the trial court agreed with MERS that interest should run on the lien while it is unpaid, whether or not Reddick was in exclusive possession of the property, as Reddick never legally lost part ownership of the property and it was her decision to vacate the property. Similarly, the trial court found the obligation to insure the property and pay property taxes existed whether or not Reddick was in physical possession of the property.

There was no abuse of discretion in these findings. The case the trial court cited, *Katsivalis*, *supra*, 70 Cal.App.3d at p. 215, does not support the proposition that interest may only be charged when the homeowner is in "exclusive possession" of the property. Moreover, as MERS asserts, the imposition of interest on the equitable lien, as well as insurance and property taxes, and Reddick's possession of the property are two separate issues. Prejudgment interest is awarded to compensate a party for the loss of his or her property, and represents the accretion of wealth which money could have produced

10.

during the period of loss. (*Greater Westchester Homeowners Assn. v. City of Los Angeles* (1979) 26 Cal.3d 86, 102-103.) Tying the award of interest to a homeowner's possession of the property where an equitable lien is imposed would deprive the lienholder of compensation for the loss of use of his or her property. The same is true with respect to the payment of insurance and property taxes, which the lender paid to protect its interest.

In sum, the trial court did not err in its awards of interest, property taxes or insurance.

*The Cross-Appeal*

In its cross-appeal, MERS contends the trial court erred when it denied its motion to dismiss Reddick's complaint based on the failure to bring the case to trial within five years of the filing of the complaint. Section 583.310 provides: "An action shall be brought to trial within five years after the action is commenced against the defendant." In computing the five-year period to bring the action to trial, time may be excluded for the following reasons: (1) "jurisdiction of the court to try the action was suspended"; (2) "[p]rosecution or trial of the action was stayed or enjoined"; and (3) "[b]ringing the action to trial, for any reason, was impossible, impracticable, or futile." (§ 583.340.)

"'In reviewing the lower court's dismissal of [an] action for failure to prosecute, the burden is on appellant to establish an abuse of discretion. [Citation.] We will not substitute our opinion for that of the trial court unless a clear case of abuse is shown and unless there is a miscarriage of justice.'" (*Sagi Plumbing v. Chartered Const. Corp.* (2004) 123 Cal.App.4th 443, 447.)

In its motion, MERS asserted dismissal was mandated because the complaint was filed on August 23, 2007 and the case had not been brought to trial within five years. MERS recognized Truhett had filed for Chapter 7 bankruptcy in the United States Bankruptcy Court, Eastern District of California, on January 14, 2009 and received a discharge on May 4, 2009. MERS asserted on that basis, Reddick might argue the

11.

superior court's jurisdiction was suspended during the pendency of Truhett's bankruptcy case, thereby extending the time in which to bring the complaint to trial. MERS, however, argued the stay applied only to Truhett, not MERS, and therefore the time was not extended as to Reddick's action against MERS.

Reddick opposed the motion, arguing it must be denied because the five-year period was tolled during the 117 days the action was stayed due to Truhett's bankruptcy case. Reddick asserted the superior court lost jurisdiction over the property because the bankruptcy court had acquired exclusive in rem jurisdiction over Truhett's legal and equitable interests in the property and any decision on the quiet title action in this case obviously would affect the property. Reddick further argued her diligence, or lack thereof, in bringing the action to trial was irrelevant due to the superior court's lack of jurisdiction, which automatically tolled running of the five-year period.

Following a hearing on the motion, the trial court denied it. The court found the action was commenced in August 2007, and while normally the five year period to bring the action to trial would have expired in August 2012, the time period was tolled for 117 days due to Truhett's bankruptcy filing in January 2009, which included the subject property and a stay of the action. Accordingly, the trial court determined that, pursuant to section 583.340, subdivision (a), the trial court lost jurisdiction and the time period for bringing the action to trial was extended to December 17, 2012.

The trial court determined the five-year statute was tolled because the trial court lacked jurisdiction to try the action. (*Christin v. Superior Court* (1937) 9 Cal.2d 526, 533.) Lack of jurisdiction is an exception to the dismissal statute (§ 583.340, subd. (a)) and, for purposes of computing the tolling period, "plaintiff's diligence, or lack thereof,

12.

has no place in the analysis." (*Schwenke v. J & P Scott, Inc.* (1988) 205 Cal.App.3d 71, 77-78.)[2]

MERS argues the trial court erred in excluding the time that Truhett was in bankruptcy because, while the court's jurisdiction was suspended as to Truhett and his property, jurisdiction was not suspended as to any other defendant, including MERS, or to adjudicate Reddick's interest in the property. MERS correctly points out that "the general rule is that bankruptcy stays only toll the five-year period as to the bankrupt." (*Santa Monica Hospital Medical Center v. Superior Court* (1988) 203 Cal.App.3d 1026, 1036.) But the trial court found, in ruling on the motion to dismiss, that it had lost jurisdiction over the case during the pendency of Truhett's bankruptcy case because the property at issue in this case was part of Truhett's bankruptcy estate. While MERS makes the general assertion that Truhett's bankruptcy did not affect the court's power or jurisdiction to adjudicate Reddick's interest in the property, it cites no legal authority to support this claim.

It is MERS's burden to demonstrate error, including citing to legal authorities. Its failure to do so means we may deem its argument forfeited. (*Keyes*, *supra*, 189 Cal.App.4th at p. 655.) The case that MERS contends is "directly applicable here," *Lane v. Newport Building Corp.* (1986) 176 Cal.App.3d 870, while instructive on the point that a bankruptcy stay as to one of multiple defendants generally does not stay the action as to the other defendants, does not address the issue raised in this case, namely whether the superior court lost jurisdiction over the property that, at the time Truhett filed his bankruptcy petition, was solely in his name and in which Reddick sought in this action to obtain an undivided one-half interest.

---

[2] Since the plaintiff's diligence is irrelevant when the time period is tolled due to loss of jurisdiction, MERS reliance on *San Ramon Valley Unified School Dist. v. Wheatley-Jacobsen, Inc.* (1985) 175 Cal.App.3d 1050, which discusses the issue of diligence, is misplaced.

As Reddick points out, a bankruptcy court has exclusive jurisdiction over all of the debtor's and estate's property as of the commencement of the case. (28 U.S.C. § 1334(e)(1) ["The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction – [¶] (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; . . . "].) Reddick asserts that because title to the property was entirely in Truhett's name when he filed his bankruptcy petition, the entire property became part of the bankruptcy estate over which the bankruptcy court had exclusive jurisdiction.

MERS responds in its reply brief that because Reddick successfully argued in this case that the forged grant deed was a nullity, only Truhett's one-half interest in the property became part of the bankruptcy estate and therefore Reddick was required to continue to prosecute the action against MERS. In support, it cites cases wherein a creditor had a secured interest in the debtor's property or an interest that had been established by court order before the filing of the bankruptcy petition, namely *United States v. Whiting Pools, Inc.* (1983) 462 U.S. 198, 199, 205-206, fn. 9 (Internal Revenue Service could be ordered to turn over the debtor's property that it had seized to satisfy a tax lien before the filing of the debtor's petition for reorganization), *In re Coupon Clearing Service, Inc.* (9th Cir. 1997) 113 F.3d 1091, 1094, 1099 (secured creditor claimed right to proceeds from debtor's business), and *In re Gendreau* (9th Cir. 1997) 122 F.3d 815, 818-819 (by virtue of family court order that awarded wife a 50 percent interest in husband's pension plans which was entered before the husband filed his bankruptcy petition, wife had an established interest in the pension plans, not an unmatured debt against the husband that was dischargeable in his bankruptcy). None of these cases, however, address whether an unadjudicated lawsuit by which the plaintiff claims an interest in the debtor's property exempts that interest from the debtor's bankruptcy estate.

14.

MERS also asserts that only the debtor's interest in jointly owned property is property of the estate, not the non-debtor's interest, citing *In re Abernathy* (8th Cir. BAP 2001) 259 B.R. 330, 332-333. According to Title 11 United States Code section 541(a)(1) the debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Here, at the commencement of the bankruptcy case, Truhett held title to the property in his name only; therefore, his legal interest in the property was as the sole owner. That Reddick established her interest in the property after the bankruptcy case closed by proving the deed was forged does not mean that she had an interest in the property at the commencement of the bankruptcy proceedings for purposes of determining what portion of the property was part of Truhett's bankruptcy estate.

MERS asserts that, at a minimum, Reddick had an equitable interest in the property that was exempt from the bankruptcy estate even if she did not hold title to the property. But merely because Reddick has a claim to an equitable interest in the property does not mean that interest is exempt from the bankruptcy estate. For example, under the law of the Ninth Circuit Court of Appeals, a constructive trust is an equitable remedy, not a claim for relief, that remains inchoate until it has been imposed by a court; while a constructive trust imposed by state law prepetition excludes the property from the debtor's estate, if it remains inchoate postpetition, the property remains property of the estate and is subordinate to the trustee's strong-arm powers. (*In re Markair, Inc.* (9th Cir. BAP 1994) 172 B.R. 638, 642.)

In sum, MERS has not satisfied its burden of demonstrating that the trial court abused its discretion when it denied MERS's motion to dismiss.

## DISPOSITION

The judgment is affirmed.

15.